The **GREATER IOWA CORPORATION** et al., Appellants,

v.

**Frank McLENDON et al., Appellees.**

Nos. 18539, 18688.

United States Court of Appeals Eighth Circuit.

May 19, 1967.

786

Max Putnam, Des Moines, Iowa, for appellants, and filed brief with Richard E. Williams and Brian Williams, Des Moines, Iowa.

Upton B. Kepford, of Kennedy, Kepford, Kelsen & White, Waterloo, Iowa, for appellees and filed brief.

Before BLACKMUN, MEHAFFY and GIBSON, Circuit Judges.

FLOYD R. GIBSON, Circuit Judge.

These are appeals from the United States District Court for the Northern District of Iowa granting summary judgment to defendants[1] on a complaint alleging violation of various sections of the Federal Securities law. Plaintiffs sought injunctive relief, both temporary and permanent, and a declaratory judgment on their rights under the Federal Securities Acts. Plaintiffs filed timely appeals. Defendants did not appeal from

1. Parties will be designated the same as they were designated in the trial court, or by name.

an adverse judgment on their counter-claims.

The plaintiffs are the Greater Iowa Corporation, the directors of that corporation, and three non-director shareholders who purport to represent, as a class, all the shareholders of the Greater Iowa Corporation. The Greater Iowa Corporation was organized in 1960 and registered with the Securities and Exchange Commission in 1965. Its registered securities amount to more than five million shares of common stock held by approximately 12,000 shareholders, most, but not all, of whom live in the state of Iowa.

In, and prior to, 1965 there was some dissatisfaction with the management of the Greater Iowa Corporation among a number of the shareholders. This dissatisfaction apparently was caused by the poor earnings of the Corporation and the decline in the value of the Greater Iowa stock. Most of the defendants are among the dissatisfied Greater Iowa shareholders. In order to gain control or, at least, a voice in management of the Greater Iowa Corporation, they organized what purported to be a voting trust solely for the purpose of "controlling or influencing control of The Greater Iowa Corporation." This arrangement was initially denominated as the Iowa Trust.[2] Under the auspices of the Iowa Trust approximately forty shareholders of the Greater Iowa Corporation were asked to turn over their registered common stock in the Greater Iowa Corporation in return for "Evidence of Ownership" in the Iowa Trust. While admittedly a security under federal and state law, these so-called evidences of ownership were not registered with the Securities and Exchange Commission. About twenty-two Greater Iowa shareholders placed their stock in the Iowa Trust and received the Iowa Trust "Evidence of Ownership."

The solicitation was primarily through the circulation by salesmen (also joined as defendants) of two pamphlets, both entitled "The Iowa Trust". The pamphlets contained an introductory statement critical of the management of the Greater Iowa Corporation, followed by an explanation of the Iowa Trust and a form which any Greater Iowa shareholder could complete to transfer his shares to the Iowa Trust. In addition a flyer was circulated entitled "Why You Should Join the Iowa Trust." This flyer made certain representations as to the earnings of the Greater Iowa Corporation and urged all stockholders to become members of the Iowa Trust. None of the three documents circulated by the defendants was registered with the Securities and Exchange Commission. Though the primary solicitation was done on a person-to-person basis, the trial court found, and correctly so, that there was sufficient use of the mails and the telephone for federal jurisdiction to attach. Once jurisdiction attaches, the full requirements and regulations of the pertinent sections of the various Securities Acts are applicable. Creswell-Keith, Inc. v. Willingham, 264 F.2d 76 (8 Cir. 1959).

Prior to the institution of this suit defendants demanded a complete shareholders list from the Greater Iowa Corporation and began legal action in the

2. The Iowa Trust was later dissolved and Stockholders Company, Inc. was immediately organized by defendants and operated as a successor to the Iowa Trust. Other than $25,000 cash, the only assets of the Stockholders Company were the shares of the Greater Iowa Corporation. It was stipulated that, "The objectives and purposes of the new corporation are essentially and fundamentally the same as the purposes and objectives of the Iowa Trust." Rather than soliciting Greater Iowa Corporation shareholders to become members of the Iowa Trust, as had been the past practice, Greater Iowa shareholders were solicited to become organizers or pre-incorporation subscribers to his new corporation. Thus, it seems that the old Iowa Trust was merely put into corporate form, and for the purposes of this litigation this change in form can have no effect on the legal issues involved.

state courts to compel a disclosure. Defendants' obvious purpose in obtaining the shareholders list was to enable them to systematically solicit additional memberships for the Iowa Trust and successor corporation in the hope of ultimately gaining managing control of the Greater Iowa Corporation, or at least a voice in management.

Plaintiffs alleged that defendants had violated the Securities Act of 1933 and Securities Exchange Act of 1934, the Investment Company Act of 1940, and the security laws of the State of Iowa; and asked for injunctive and declaratory relief. Specifically, plaintiffs alleged that the issuance by the Iowa Trust of "Evidence of Ownership" without prior registration with the Commission violated § 5(a) of the 1933 Act (15 U. S.C. § 77e(a)), that the statements in defendants' solicitation material were fraudulent and thus violated both § 17 (a) of the 1933 Act (15 U.S.C. § 77q(a)) and § 10(b) of the 1934 Act (15 U.S.C. § 78j(b)) as implemented by Rule 10b–5 (17 C.F.R. 240.10b–5), that defendants' solicitations were requests for a "proxy or consent or authorization" under § 14(a) of the Exchange Act of 1934 (15 U.S.C. § 78n) and the Commission rules governing these matters were not followed as set forth C.F.R. § 240.14a–1–11, in violation of § 14(a) of the 1934 Act (15 U.S.C. § 78n), that the Iowa Trust and successor corporation were investment companies and thus subject to the regulations of § 7 of the 1940 Act (15 U.S.C. § 80a–7), and finally that the trial court had pendent jurisdiction to litigate various alleged violations of the Iowa State securities law.

Upon request of plaintiffs, the trial court granted a preliminary restraining order enjoining solicitation by defendants pending further hearing. On August 30, 1966, after hearing, the preliminary restraining order was dissolved and plaintiffs' request for a temporary injunction was denied. Plaintiffs duly filed an appeal from that order and it was docketed by this Court with the number 18539. Before this appeal could be heard, however, the trial court on cross-motions for summary judgment found that plaintiffs had no jurisdictional standing to seek enforcement of the registration requirements and anti-fraud provisions of § 5(a), § 17(a), of the 1933 Act and § 10(b) of the 1934 Act (15 U.S.C. § 77e, 77q and 78j(b)), because plaintiffs were neither buyers or sellers of defendants' security. Though the trial court found that private parties have standing to enforce the proxy registration requirements of the Commission, the court found that defendants' solicitation of membership in the voting trust arrangement was not the solicitation of a "proxy or consent or authorization" within the contemplation of § 14(a) of the Exchange Act of 1934, 15 U.S.C. § 78n(a). Further, relying on a decision of this Court, Brouk v. Managed Funds, Inc., 286 F.2d 901 (8 Cir. 1961), the trial court held that private parties have no standing to enforce the provisions of the Investment Company Act of 1940 (15 U.S.C. § 80–1 et seq.). Finally, the trial court, as an act of discretion, dismissed the allegations of state law violations on the basis that the federal court was not the proper forum for the resolution of state security law problems when all of the federal questions which give rise to federal jurisdiction have been summarily disposed of.

Plaintiffs appeal this dismissal (No. 18688), and since common questions of law are presented with plaintiffs' appeal from the denial of the temporary injunctive relief (No. 18539), the two appeals were consolidated for hearing and opinion.

## VIOLATIONS OF SECTIONS 5(a) AND 17(a) OF THE 1933 ACT

Section 5(a) of the 1933 Act (15 U.S. C. § 77e(a)) makes it unlawful to sell through communications or transportations in interstate commerce or by use of the mails any security that is not registered with the Securities and Exchange Commission. Section 17(a) (15 U.S.C.

§ 77q) makes it unlawful for any person engaged in the interstate sale of securities to practice deception or fraud.[3] To some extent defendants used interstate communication and the mails to sell their shares in the Iowa Trust and these shares were not registered with the Commission. Furthermore, plaintiffs allege that the documents circulated by defendants entitled "The Iowa Trust" and "Why You Should Join the Iowa Trust" were misleading, untrue, and fraudulent within the meaning of the statutes. The question before us on this appeal is, do plaintiffs have standing to enforce these provisions of the law?

No civil enforcement is provided in the particular sections of the Act allegedly violated. However, § 12 of the Act (15 U.S.C. § 77l) provides a limited right of recovery to private litigants. This section of the Act generally provides that any person who sells through interstate commerce or by use of the mails any security not registered or makes untrue or misleading statements in the sale of a security "shall be liable to the person purchasing such security from him * * *." [4]

■■ None of the plaintiffs has purchased any of the Iowa Trust certificates from the defendants. Since 15 U.S.C.

§ 77l only provides relief to "purchasers" it is clear that this section cannot provide plaintiffs with a basis upon which to seek recovery. Furthermore, we do not believe that plaintiffs have standing as a class to represent the shareholders of Greater Iowa Corporation who did join the Iowa Trust. Plaintiffs interests are not typical or representative of the interests of the individuals who purchased defendants' securities. The positions of the individual plaintiffs present questions of law that are not common to the members of the class they are seeking to represent. Thus, under Rule 23, Fed.R.Civ.P. they are not entitled to maintain a class action on behalf of the Greater Iowa shareholders who are members of the Iowa Trust.

Plaintiffs argue that the actions of defendants are clearly contrary to statutory mandate and that they were injured by these activities. Even though they do not have an express statutory remedy, plaintiffs argue that a common law tort remedy for the statutory violations should be implied by the courts.

■ The Courts as a general rule recognize a private right of action for a violation of a statutory duty or a liability. This doctrine as originally enunciated in the old English case of Couch v. Steel, 3

3. 15 U.S.C. § 77q(a):
"(a) It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—
"(1) to employ any device, scheme, or artifice to defraud, or
"(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
"(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser."

4. 15 U.S.C. § 77l:
"Any person who—
"(1) offers or sells a security in violation of section 77e of this title, or

"(2) offers or sells a security * * *, by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission,

shall be liable to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon. * * *"

El & Bl. 402, 411, 118 Eng.Rep. 1193, 1196 (Q.B.1854), has been generally followed in this country. The Supreme Court in Texas & Pacific Railway Company v. Rigsby, 241 U.S. 33, 36 S.Ct. 482, 60 L.Ed. 874 (1916) recognized a private right of action for damages for violation of the Safety Appliance Act to one of a class for whose special benefit the statute was enacted. And in Bell v. Hood, 327 U.S. 678, 684, 66 S.Ct. 773, 777, 90 L.Ed. 939 (1946) the Court reiterated "And it is also well settled that where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done." Then in J. I. Case Co. v. Borak, 377 U.S. 426, 430, 84 S.Ct. 1555, 1559, 12 L.Ed.2d 423 (1964), the Court specifically held: "[T]hat private parties have a right under § 27 [of the Securities and Exchange Act of 1934] to bring suit for violation of § 14(a) of the Act."

The Restatement of Law, Second, Torts 2d, (1965) fully recognizes this principle and the qualifying limitations thereof in § 286 as follows:

"The court may adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively or in part

"(a) to protect a class of persons which includes the one whose interest is invaded, and

"(b) to protect the particular interest which is invaded, and

"(c) to protect that interest against the kind of harm which has resulted, and

"(d) to protect that interest against the particular hazard from which the harm results."

■ However, a breach of statutory duty does not give rise to a private cause of action to every person injured by the statutory breach. The law clearly demands that the statutory breach must cause injury to one of the class that the statute is designed to protect. Taussig v. Wellington Fund, Inc., 313 F.2d 472, 476 (3 Cir. 1963), cert. denied 374 U.S. 806, 83 S.Ct. 1693, 10 L.Ed.2d 1031; Restatement of Torts, § 286 and § 288, supra; Prosser on Torts, pp. 154–156 (2nd Ed. 1955). Aside from the broad general welfare which the Commission alone is charged with protecting, we believe it is clear from the history and language of the statute that § 5(a) and § 17 (a) were designed primarily for the protection of investors who may purchase the unregistered or fraudulently sold shares. S. E. C. v. Ralston Purina Co., 346 U.S. 119, 124, 73 S.Ct. 981, 97 L. Ed. 1494 (1953). For that reason only these investors were given the express civil remedy. We do not believe that the statute was designed for the protection of those who are not investors or do not have any semblance of legal privity with the party dealing in the unregistered or fraudulently sold security.

■ The intent of Congress is clear. Section 12 provides a private civil remedy to "purchasers". We think this is the civil remedy given to private parties by the framers of the Act, and excludes establishment of additional private civil remedies. Had Congress desired to extend the private civil remedy it could have done so by the addition of only a few words. Its failure to do so, and its express limitation to "purchasers" is a positive indication that Congress desired these provisions privately enforced by purchasers only. It is our conclusion that private civil liability for violations of § 5(a) and § 17(a) exist only when the provisions of § 12 (15 U.S.C. § 77l) are met. Therefore, plaintiffs have no jurisdictional standing to invoke the provisions of § 5(a) and § 17(a) of the 1933 Act. Creswell-Keith, Inc. v. Willingham, 264 F.2d 76, 80 (8 Cir. 1959); Trussell v. United Underwriters, Ltd., 228 F.Supp. 757, 766–767 (D.Colo.1964). See, Hooper v. Mountain States Securities Corporation, 282 F.2d 195, 201 (5 Cir. 1960), cert. denied 365 U.S. 814, 81 S.Ct. 695, 5 L.Ed.2d 693; Hoover v. Allen, 241 F.Supp. 213, 223 (S.D.N.Y.

1965). This section of the trial court's opinion is affirmed.

## VIOLATION OF SECTION 10(b) of THE 1934 ACT

Section 10(b) of the 1934 Act (15 U.S.C. § 78j(b)) makes it unlawful for any person, by use of any means or instrumentalities of interstate commerce or the mails to employ "in connection with the purchase or sale of any security * * * any manipulative or deceptive device * * * in contravention of such rules and regulations as the Commission may prescribe * * *." As a Commission implementation of this statutory design, Rule 10b–5 (17 C.F.R. 240.10b–5) makes it unlawful for any person to defraud or make untrue or misleading statements, "in connection with the purchase or sale of any security." [5]

■ No civil remedy is provided for the enforcement of § 10(b) or Rule 10b–5. However, the courts have uniformly implied a cause of action in favor of certain plaintiffs for injuries caused by the violation of the statute and rule. Ruckle v. Rota American Corporation, 339 F.2d 24, 28 (2 Cir. 1964); Fratt v. Robinson, 203 F.2d 627, 632, 37 A.L.R.2d 636 (9 Cir. 1953); Fischman v. Raytheon Mfg. Co., 188 F.2d 783 (2 Cir. 1951); Slavin v. Germantown Fire Ins. Co., 174 F.2d 799, 805 (3 Cir. 1949); Hooper v. Mountain States Securities Corporation, supra.

■ As plaintiffs are provided with no express statutory remedy their asserted right of action under the statute is again predicated upon the doctrine of common law tort recovery for injuries suffered because of defendants' violation of the statute. However, as we discussed above, injury caused by a violation of a statute does not provide a basis for a private civil suit unless the statute was enacted for the protection of the class of which the injured party is a member. As with the 1933 Act, the 1934 Act is primarily designed for the protection of investors. S.E.C. v. Ralston Purina Co., 346 U.S. 119, 124, 73 S.Ct. 981, 97 L.Ed. 1494; Cooper v. North Jersey Trust Company of Ridgewood, N. J., 226 F. Supp. 972 (S.D.N.Y.1964). And, Rule 10b–5 specifically provides protection only in connection with the purchase and sale of the security. Plaintiffs are neither investors or purchasers or sellers of the security in question. It would seem, therefore, that they would not be entitled to bring a private civil action for a violation of the statute. As was stated in the leading case of Birnbaum v. Newport Steel Corp., 193 F.2d 461, 464 (2 Cir. 1952), cert. denied 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356, " * * * Rule X–10B–5 extended protection only to the defrauded purchaser or seller. Since the complaint failed to allege that any of the plaintiffs fell within either class, the judgment of the district court [dismissing the complaint for failure to state a cause of action] was correct * * *." This was the interpretation placed on this statute and rule by the trial court and we believe this interpretation is correct. As plaintiffs are neither purchasers or sellers of the allegedly fraudulent security and were not the parties defrauded by a purchase or sale, they are not within the class afforded protection under the Act and implementing Rule and consequently have failed to state any cause of action for violation of § 10(b) of the 1934 Act. Hooper v. Mountain States Securities Corporation, 282 F.2d 195 (5 Cir. 1960), cert. denied

---

5. 17 C.F.R. 240.10b–5:
 "It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate Commerce, or of the mails or of any facility of any national securities exchange,
 "(a) To employ any device, scheme, or artifice to defraud,
 "(n) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
 "(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."

365 U.S. 814, 81 S.Ct. 695, 5 L.Ed.2d 693; Birnbaum v. Newport Steel Corp., supra; O'Neill v. Maytag, 230 F.Supp. 235 (S.D.N.Y.1964), aff'd 339 F.2d 764 (2 Cir. 1964); Hoover v. Allen, 241 F. Supp. 213, 223 (S.D.N.Y.1965).

### EFFECT OF SECTION 29(b) OF 1934 ACT

Plaintiffs allege that the defendants' solicitations are a violation of § 10(b) of the 1934 Act and Commission Rule 10b–5. Plaintiffs then point to § 29(b) of the Act (15 U.S.C. § 78cc(b)) which reads in its pertinent part as follows:

"(b) Every contract made in violation of any provision of this chapter or of any rule or regulation thereunder, * * * shall be void (1) as regards the rights of any person who, in violation of any such provision, rule, or regulation, shall have made or engaged in the performance of any such contract, * * *."

Consequently, plaintiffs assert the absolute voidness of the transfers of the Greater Iowa common stock to the Iowa Trust, and seek declaratory relief as to the rights created thereunder.

We think this section is clear. Subsection (1) only declares to be void the rights of any person who violates the provisions of the statute. The contract rights of the party not in violation are in no way impaired. Bankers Life and Casualty Company v. Bellanca Corporation, 288 F.2d 784, 787 (7 Cir. 1961), cert. denied 368 U.S. 827, 82 S.Ct. 47, 7 L.Ed.2d 31. Though § 29(b) speaks in terms of "void" and the guilty party is clearly precluded from enforcing the contract against an unwilling innocent party, just as clearly the innocent party is left free to enforce the contract if he so desires. This being true the contract cannot possibly be considered absolutely and totally void. It is a contract "voidable" at the option of the innocent party. Royal Air Properties, Inc. v. Smith, 312 F.2d 210, 213 (9 Cir. 1962). If this contract is "voidable," or void only at the option of the innocent party, the contract must be con-

sidered valid until voided by the party having the right of recision. Jack Mann Chevrolet Co. v. Associates Inv. Co., 125 F.2d 778, 786 (6 Cir. 1942); Great American Reserve Insurance Company of Dallas v. Strain, 377 P.2d 583, 587 (Okl. 1962); Black's Law Dictionary (4th Ed. 1957).

From our prior discussion we believe the only private party capable of attacking the validity of these transactions between the Greater Iowa shareholders and the defendants are the shareholders who were allegedly defrauded. The guilty party cannot assert the invalidity of these contracts. Certainly, too, the plaintiffs, as strangers to the contracts, have no standing to inject themselves between contracting parties and assert the invalidity of transactions to which the contracting parties are apparently perfectly content to enter and observe. As stated in Natkin v. Exchange National Bank of Chicago, 342 F.2d 675, 676–677 (7 Cir. 1965):

"Although a violation such as here alleged operates to void the contract rights of the party in violation * * there is nothing in the section [29(b)] which operates to create any right or cause of action against the party in violation in favor of a stranger to the contract."

Consequently, it is our opinion that plaintiffs have no standing to assert the illegality of the contracts entered into between certain Greater Iowa shareholders and the defendants. Any rights granted to defendants by these shareholders must, at this time, be observed by the Greater Iowa Corporation, and these rights are not subject to collateral attack by the plaintiffs.

### VIOLATION OF SECTION 7 OF THE 1940 ACT

The Investment Company Act of 1940 is primarily concerned with the regulation of the issuer of securities that engages in the business of investing and trading in the securities of others. Section 7 of the Act (15 U.S.C. § 80a–7) makes it unlawful for any investment

company not registered to offer or sell any of its securities in interstate commerce or by use of the mails.

Defendants were not registered as an investment company and plaintiffs brought this allegation to enforce compliance. We will assume without deciding that defendants' voting trust and successor corporation fall within one or more of the broad definitions of an "investment company" found at 15 U.S.C. § 80a–3 as it was engaged "in the business of investing, reinvesting, owning, holding, or trading in securities * * *." And we assume, but do not decide, that defendants are not entitled to the exemption under 15 U.S.C. § 80a–3(c) (14) as "Any voting trust the assets of which consist exclusively of securities of a single issuer which is not an investment company," because defendants' organization has the substantial cash asset of $25,000, and is set up with wide investment powers, including power to manage real estate owned by the Trust.

Our problem is then to determine whether plaintiffs have the jurisdictional standing to enforce a violation of § 7 of the Investment Company Act. We held in Brouk v. Managed Funds, Inc., 286 F.2d 901 (8 Cir. 1961), that, absent express Congressional authorization, private civil liability would not be implied for director's violations of the Act.[6]

In light of the developments of the law, the time may soon arrive when we should reexamine that position. The Supreme Court in J. I. Case Co. v. Borak, supra, emphatically endorsed implied private civil remedies for violation of § 14(a) of the 1934 Exchange Act. In so doing the Court on page 433 of 377 U.S., page 1560 of 84 S.Ct., 12 L.Ed.2d 423, stated: "It is for the federal courts 'to adjust their remedies so as to grant the necessary relief' where federally secured rights are invaded." In coming down strongly in favor of courts implying private civil remedies where none are expressed, the strong indications are, that if given the opportunity, the Supreme Court would also find an implied civil liability in the Investment Company Act and thereby overrule our opinion in Brouk.

Not only has the Supreme Court indicated its preference for broad civil remedies under the securities law, but the lower courts have universally implied private civil liability for violation of the fraud provisions protected by 15 U.S.C. § 78j(b). The rationale for application of implied civil liability in the areas of proxy and fraud is perhaps equally applicable to the area of investment companies. Among the Circuits that have considered the problem, the trend seems to be in favor of accepting an implied civil liability for violations of the Investment Company Act, thus placing this Circuit in the minority rule. See, Taussig v. Wellington Fund, Inc., 313 F.2d 472, 476, cert. denied 374 U.S. 806, 83 S.Ct. 1693, 10 L.Ed.2d 1031 (3 Cir. 1963); Brown v. Bullock, 294 F.2d 415 (2 Cir. 1961); II Loss, Securities Regulation (1962 Supp.), pp. 14–15.

Consequently, should the necessity present itself this Court will carefully review the position taken in Brouk in light of the law as it may then exist. However, such an examination is not necessary at this time since if we were to find that a private civil remedy exists for violation of the 1940 Act, we do not believe that plaintiffs are proper parties for the enforcement of its violations. Again, as before, plaintiffs simply do not have standing to state a cause of action under this statute because they are not within the class that the statute was designed to protect. A reading of the "Findings and Declarations of Policy"

---

6. The Supreme Court granted certiorari at 366 U.S. 958, 81 S.Ct. 1921, 6 L.Ed. 2d 1252 and at 369 U.S. 424, 82 S.Ct. 878, 8 L.Ed.2d 6 our judgment was vacated and the case was remanded to the District Court with instructions to dismiss the cause of action. However, it appears that a settlement had been reached in that case. Consequently, both parties on a joint motion requested the Court's action, and the Supreme Court, declaring the issues moot, did not rule upon the merits of the case.

at 15 U.S.C. § 80a–1 indicates that the Act was primarily aimed at the protection of individuals who purchase the security issued by the investment company. Repeated reference is made to the security holder and to the investor, without mention of the class of which plaintiffs are members. The Act provides for disclosure of pertinent facts to the shareholders, fair management, investment of assets for the benefit of shareholders rather than the management, sound financing of the company; all generally or specifically designed for the protection of the investing public.

Plaintiffs have no legal connection with defendants' operation. They are not competitors being injured by illegal practices. They are not investors being deprived of the protection afforded by the Act. They are not privies or beneficiaries of any contract with defendants. Plaintiffs are merely fellow shareholders and the issuer of securities held by this alleged investment company. We see no basis under this Act that the issuer company can oversee the trading of its securities or object to the method in which its shares are acquired or the persons who acquire them.

If the general public interest is being harmed by defendants' operations the Commission has the authority to bring these operations within the confines of the law. If individual investors are being injured by defendants' disregard of the law, perhaps they too have the right to privately seek recompense for their injury. However, plaintiffs have not shown any basis by which they were injured or have standing to object to defendants' operation as an investment company without proper registration. Whatever rights may exist in other parties, we are convinced that defendants are not of a class entitled to protection under the 1940 Investment Company Act, and as such they have failed to state a cause of action under § 7 of that Act. Consequently, this segment of the trial court's order is affirmed.

## ENFORCEMENT OF SECTION 14(a) OF THE 1934 ACT

Section 14(a) of the 1934 Act (15 U.S.C. § 78n(a)) provides in part that it shall be unlawful for any person, by use of the mails or by any means of interstate commerce "to solicit any proxy or consent or authorization in respect of any security * * * registered on any national securities exchange in contravention of such rules and regulations as the Commission may prescribe as necessary * * *." The Commission has implemented this statute by various rules prescribing the conduct of those seeking proxies, consents or authorizations. 17 C.F.R., § 240.14a–1–11. Defendants have failed to abide by any of the numerous rules in their solicitation of membership in their voting trust, and plaintiffs brought suit under § 14(a) to enforce compliance. The trial court held that "a proxy, consent or authorization implies a concurrence or agency type relationship" that does not exist in the transfer of the stock to a voting trust arrangement. Plaintiffs argue to the contrary, and we believe their argument has substantial merit.

Though no private civil enforcement is expressly provided in the Act, J. I. Case Co. v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964) holds that shareholders have the standing to bring a private civil action for the enforcement of the proxy rules enacted pursuant to § 14(a). This standing to object to violations of § 14(a) resides in shareholders who are not solicited, Dann v. Studebaker-Packard Corporation, 288 F.2d 201 (6 Cir. 1961), and to the registered corporation whose shareholders' proxies are being solicited. Studebaker Corporation v. Gittlin, 360 F.2d 692 (2 Cir. 1966). Certainly the beneficent purposes of the Act are best served by recognizing a private right of action for investors or certain corporations harmed by a violation of the statutory duties and liabilities imposed by § 14(a).

Our task is to determine if the solicitation of membership in a voting

trust arrangement can be considered a solicitation of a "proxy or consent or authorization." To determine what is meant by Congress' use of the words "proxy or consent or authorization" we will be guided by the doctrine of statutory interpretation set forth in S.E.C. v. C. M. Joiner Leasing Corporation, 320 U.S. 344, 350–351, 64 S.Ct. 120, 123, 88 L.Ed. 88 (1943). "[C]ourts will construe the details of an act in conformity with its dominating general purpose, will read text in the light of context and will interpret the text so far as the meaning of the words fairly permits so as to carry out in particular cases the generally expressed legislative policy."

 The next step must be the determination of the "dominating general purpose" and the "generally expressed legislative policy" of § 14(a). Of course, it is well recognized that the securities and exchange legislation has broad remedial purposes for protection of the investing public and should be liberally construed. S.E.C. v. Ralston Purina Co., 346 U.S. 119, 73 S.Ct. 981, 97 L.Ed. 1494 (1953). More particularly:

"The purpose of § 14(a) is to prevent management or others from obtaining authorization for corporate action by means of deceptive or inadequate disclosure in proxy solicitation. The section stemmed from the congressional belief that '[f]air corporate suffrage is an important right that should attach to every equity security bought on a public exchange.' * * * It was intended to 'control the conditions under which proxies may be solicited with a view to preventing the recurrence of abuses which * * * [had] frustrated the free exercise of the voting rights of stockholders.'" J. I. Case Co. v. Borak, supra at 431 of 377 U.S., at 1559 of 84 S.Ct.

"It is contemplated that the rules and regulations promulgated by the Commission will protect investors from promiscuous solicitation of their proxies, on the one hand by irresponsible out-siders seeking to wrest control of

a corporation away from honest and conscientious corporation officials; and, on the other hand, by unscrupulous corporate officials seeking to retain control of the management by concealing and distorting facts." S. Rept. No. 1455, 73rd Cong. 2d Sess. (1934) 77, as reported in II Loss, Securities Regulation (2nd Ed. 1961) p. 950.

 The purpose of the Section becomes clear, to provide full and honest disclosure by those who are seeking to maintain or gain control of a corporation through solicitation of the corporate voting rights of the shareholders. Corporate suffrage is an important incident of corporate ownership and is a right deserving of careful protection. Consequently, standards of conduct have been established for parties who seek the voting rights of others, and all contestants for these voting privileges are held to the same high standard of fair play and open disclosure.

 With this purpose in mind, it is clear to us that had defendants formed a stockholders committee and solicited proxies in their campaign to gain control of the Greater Iowa Corporation, they would have had no choice but to conform with the Commission rules governing solicitation. Therefore, it seems wholly at odds with the section's spirit and purposes to allow these same individuals to openly solicit membership in their trust arrangement, which has as its sole purpose the securing of voting rights of Greater Iowa Corporation shareholders, without requiring them to comply with the rules governing the solicitation of such voting rights. The dangers and possible abuses are equal to the dangers and abuses attached to the solicitation of the most orthodox form of proxy. From our position it seems that defendants may be attempting to do indirectly what they would be clearly prohibited by law from doing directly, i. e., solicitation of voting rights on registered shares without proper registration, disclosure, etc. Courts should hesitate to sanction a result which thwarts established legis-

lative purposes, or allows a skirting of the law merely on the basis of form. S.E.C. v. Timetrust, Inc., 28 F.Supp. 34, 38 (N.D.Cal.1939). As said by Loss in his Securities Regulations, Vol. I, p. 462, "But the touchstone should always be substance rather than form, whether it operates to include or exclude." To permit such a "loophole" to exist would be to invite any group of dissatisfied shareholders to avoid the restraints of Commission proxy rules simply by organizing along the lines of a voting trust. Consequently, if the solicitation of voting trust membership can fairly and reasonably be interpreted as a solicitation of a "proxy or consent or authorization," thus bringing it within the jurisdiction of Commission regulation, such an interpretation will be attached.

■ While "proxy" is perhaps a narrow word of art implying an agency relationship, the statute goes further. The words "consent" and "authorization" are extremely broad words and are not limited by the word "proxy". No doubt Congress intended that the words of the Act be given the broadest meaning necessary to effectuate its stated purposes. S.E.C. v. Joiner Leasing Corporation, supra. By including all of these words in the disjunctive, we believe Congress intended to cover the entire field of solicitation for corporate control and all of the various solicitation situations which might arise from time to time, whether conventional, novel, irregular or unorthodox.

Our view on this is buttressed by Commission Rule 14a–1(f) (17 C.F.R. 240.-14a–1(f)) which states:

"The terms 'solicit' and 'solicitation' include:

"iii The furnishing of a form of proxy [7] or other communication to security holders under circumstances reasonably calculated to result in the procurement, withholding or revoking of a proxy."

Certainly, the communication of defendants encouraged Greater Iowa shareholders to relinquish the voting rights to their shares, thus inducing as a matter of course the "withholding" of their proxy from the management of the Greater Iowa Corporation. This indicates to us that this type of situation was contemplated within the purposes of the Commission Rules.

■ "Authorization" can be defined as the grant or endowment with authority. See, Webster's 3rd New International Dictionary. What defendants appear to be doing is soliciting relatively unlimited "authority" from Greater Iowa shareholders to vote their stock, as defendants, in their discretion, see fit. Defendants seem to be seeking nothing less than an "authorization" to use the absolute voting privileges of this registered security. The Greater Iowa shareholder is simply asked to contractually "consent" to defendants voting his Greater Iowa stock while he continues to maintain his beneficial interest in the Greater Iowa Corporation. We, therefore, believe that "in the light of the context" and "generally expressed legislative policy" the statute regulating the solicitation of a "proxy or consent or authorization" can be fairly and accurately interpreted as encompassing, under some circumstances, the solicitation of membership in voting trusts and like arrangements.

■ The ownership of a share of stock carries with it certain incidents. Primary among these incidents is a right to share in the management of the corporation (right to vote), a right to share in corporate earnings, and a right to a share of the assets of the corporation upon dissolution. Trethewey v. Green River Gorge, Inc., 17 Wash. 2d 697, 136 P.2d 999, 1010 (Wash.1943); Bijur v. Standard Distilling and Distributing Co., 74 N.J.Eq. 546, 70 A. 934, 939 (1908); 18 C.J.S. Corporations §

---

7. Proxy is further defined in 240.14a–1 (d):

"The term 'proxy' includes every proxy, consent or authorization within

the meaning of section 14(a) of the act. The consent or authorization may take the form of failure to object or dissent."

482, See, also 13 Fletcher Cyclopedia Corporations (Rev.Ed. 1961) § 5717. When a shareholder is requested to give a proxy, he is being asked to relinquish his private right to share in the management of the corporation, although he continues to enjoy the same interest in the assets and earnings of the corporation. Likewise, when the organizers of a voting trust ask shareholders to turn over their stock in return for a share of the trust corpus, the individual shareholder generally maintains, though indirectly, his beneficial interest in the assets and earnings of the corporation. In both cases the only incident actually relinquished is the right to share in the corporation's management. This is to be distinguished from an outright sale of the stock where all of the incidents of ownership are transferred and the vendor no longer has any interest in the corporation which the share represents. In our opinion the situations of a voting trust and proxy solicitations may be so analogous that they both must be considered the solicitation for a "proxy or consent or authorization" within the meaning, purposes and intent of § 14(a) of the 1934 Act. Indeed, in actual practice the solicitations of subscriptions to a voting trust may very well be tantamount to a shareholder's committee asking for a proxy. In this situation the law shoud recognize the reality of the transaction.

This is not to say that all voting trusts and similar arrangements must come under the regulation of § 14(a). Each case must be measured by its particular facts and decided on an *ad hoc* basis. Individual shareholders have a right to join together for their mutual protection and to advance their mutual interests. When they become dissatisfied with management they should be free to discuss their grievances and seek to influence the votes of other shareholders in any legal manner.

We are aware that historically it is extremely difficult to oust entrenched management or even to challenge directors to account for their managerial responsibilities. We think dissenting security holders have absolute right to challenge management and to question entrenched management's stewardship. No arbitrary blocks or barriers should be raised by the courts in exercising this phase of corporate suffrage.

It does appear, however, that the dissident security holders group here struggling for corporate control comes within the protective design and intent of § 14(a) when that group circularizes security holders to obtain their authorization and consent to challenge management through the medium of exchanging a trust receipt or corporate shares for the security holders' shares. This transaction is not an actual sale of the Greater Iowa Corporation shares. It is merely an exchange that amounts to a transfer of a security holders Greater Iowa stock to be temporarily used by Iowa Trust as it may desire in pursuing its announced and sole purpose of gaining control or influencing the operation of the Greater Iowa Corporation. The value of Iowa Trust shares, when issued, rests solely on the value of the Greater Iowa stock for which the former shares are exchanged. Upon termination of the Iowa Trust Plan, as now exemplified by Stockholders, Inc., the receipts or shares given to the Greater Iowa security holders in exchange for the temporary use for their stock will again be exchanged for the fungible Greater Iowa stock that is left in the Iowa Trust, less solicitation and operating charges, in a pro rata ratio of the original exchange to the total Greater Iowa shares remaining in the trust or Stockholders, Inc. The fact that under the proposed Stockholders, Inc.'s pre-incorporation agreement the management of that corporation can dispose of the stock and pay the original Greater Iowa security holder in cash at its option may be relevant but does not of itself change the basic characteristics of this plan and device to secure corporate control of Greater Iowa. The denomination of the arrangement as a "voting trust" or a "corporation" does not automatically

immunize it from the "fair play" required of all groups who seek the voting rights of others, nor will the mere formality of transferring legal title provide an escape hatch to the solicitor when the shareholder maintains a substantial beneficial interest in the corporation. Consequently, when any group, regardless of the label attached, has as it goal the influencing or control of a registered corporation, and through organized, widespread solicitation seeks to secure the voting rights of shareholders, reserving in these shareholders a beneficial interest in the registered corporation, this solicitation should be governed by Commission rules as provided in § 14(a).

■ We, of course, do not presume to pass upon the merits of this plan, nor does SEC, under § 14(a), pass upon the merits or fairness of any plan presented to security holders, as it does under the Holding Company Act, but we do think that any solicitation for proxies or authorizations or consents to a particular course of conduct affecting corporate operation should be conducted under the rules of full, fair and complete disclosure, devoid of any materially false or misleading statements as contemplated by § 14(a) of the Act. Management must adhere to this standard and the well-meaning dissidents should do likewise. It is only by the application of this single standard of conduct that the corporate suffrage or each security holder can be fully protected. In this struggle for corporate dominance or control, a meaningful choice should be presented to the security holder, who is in turn fully armed with a complete and fair disclosure of all relevant information pertaining to the exercise of his corporate suffrage.

■ The defendants have available ways and means of presenting their views and proposals to the Greater Iowa security holders. As pointed out by Loss, Securities Regulations, Vol. II, p. 889:

"A major problem in any system of proxy regulation is the equalization, so far as practicable of the rights of management and of opposition security holders. The SEC rule attacks this problem in three ways: (i) by assuring access to fellow security holders, (ii) by imposing special requirements on all participants in contested elections, and (iii) by opening the management's own proxy statement to legitimate proposals of security holders."

The disclosure of stockholders list is left to state law, but if management is confronted with a proper corporate proposal made by those outside of management, management must either (1) furnish a stockholders list upon request of a stockholder, or (2) mail the proposed proxy material for the requesting stockholder or stockholders, all at the expense of the requesting stockholder or stockholders. Loss, supra, at p. 890.

■ Plaintiffs have stated a good cause of action under § 14(a), and a factual question is presented as to the legal position of the Iowa Trust and its successor corporation. Consequently, the summary judgment in favor of defendant on this issue was error. However, since the question of whether this voting trust arrangement is tantamount to a solicitation of a proxy, consent or authorization, presents a factual issue and since there has been no trial on the merits, we hesitate to rule as a matter of law that defendants' operation comes within the proscription of § 14(a). The trial court should be given the first opportunity to make a finding on this subject, after a trial on the merits. Consequently, this issue is remanded for a full factual hearing and determination. Defendants should be accorded the opportunity to show that this arrangement is not within the comprehension of § 14(a) and they might be able to advance sound reasons, which we do not think they have done in the summary judgment proceeding, why a voting trust arrangement of this type should be beyond the scope of the Act. It would be helpful to have an *amicus curiae* brief from the SEC, so that the Court would have the benefit of the Commission's expertise.

Since the SEC has the expressed statutory obligation of enforcing the statutory provisions of this Act, and since this point does appear to be one of first impression, we think this question should be considered from all sides with as much light as possible. Then, should the trial court find, after viewing all of the relevant factors in the light of the views expressed by this Court, the defendants' solicitation comes within the prohibition of § 14(a), it has the power to enter the necessary and proper orders.

## STATE LAW VIOLATIONS

As this case is being remanded for reconsideration of defendants' status under § 14(a) of the 1934 Act, the trial court may wish to consider the merits of the allegations as to violations of the Iowa law that were dismissed by it solely because of the summary disposal of the federal questions. We will, therefore remand these issues of state law to the trial court for reconsideration of its pendent jurisdiction.

## CONCLUSION

Since most of the issues have been determined adversely to the plaintiffs in appeal number 18688, they were obviously not entitled to preliminary injunctive relief on these issues as requested in appeal number 18539. On the sole issue which has been remanded, we do not believe the trial court has abused its discretion in failing to grant preliminary injunctive relief. Injunctions are extraordinary legal remedies and are granted sparingly and under strict rules for the protection of all parties. Even though plaintiffs have demonstrated a possibility of recovery on one issue in their complaint, we must yield to the trial court's finding that plaintiffs have made no showing of immediate and irreparable harm pending trial on the merits. Maryland Casualty Company v. American General Insurance Company, 232 F.Supp. 620 (D.C.1964). The trial court did not abuse its discretion in refusing to grant preliminary injunctive relief. However, this opinion should not inhibit the trial judge from issuing injunctive relief that he deems necessary to fairly resolve the remaining issues between the parties.

Accordingly, appeal 18539 is affirmed. In accordance with the views expressed herein, appeal 18688 is affirmed in part, reversed in part and remanded.