**W. A. KRUEGER CO., a Wisconsin Corporation, Plaintiff,**

v.

**KIRKPATRICK, PETTIS, SMITH, POLIAN, INC., a Nebraska Corporation, David Allsopp & Associates, Inc., a Delaware Corporation, David Allsopp & Partners Limited, a foreign corporation, Herbert H. Davis, Jr., Ira L. Couch, Jr., Paul R. Wertz and James L. Koley, Defendants.**

Civ. No. 79–0–56.

United States District Court, D. Nebraska.

Feb. 27, 1979.

William E. Morrow, Jr., George C. Rozmarin, Omaha, Neb., David J. Hase, Milwaukee, Wis., for plaintiff.

Robert J. Banta, Omaha, Neb., for defendant James L. Koley.

Donald F. Burt, Stephen E. Gehring, Lincoln, Neb., for defendants Kirkpatrick, Pettis, Smith, Polian, Inc., Herbert H. Davis, Jr., Ira L. Couch, Jr., Paul R. Wertz.

Thomas R. Burke, Lyman L. Larsen, Patricia A. Zieg, Omaha, Neb., for defendants David Allsopp & Associates, Inc., David Allsopp & Partners, Ltd.

## MEMORANDUM

DENNEY, District Judge.

The W. A. Krueger Company is a Wisconsin corporation engaged in the business of

printing magazines, books and commercial products. A publicly-held company, Krueger has over 3,600,000 shares of common stock outstanding, all of which are traded in the over-the-counter market.

On February 9, 1979, Krueger filed a lawsuit in federal district court, generally alleging the existence of a civil conspiracy on the part of the named defendants. The complaint states that the purpose of the conspiracy was to cause the plaintiff's stock to be disposed of in such a manner as to change or influence the control of Krueger. More specifically, Krueger alleges violations of Sections 10(b) and 13(d) of the Securities Act of 1934, S.E.C. Rule 10b–5, and the Wisconsin corporate take-over law.

James L. Koley has filed a motion to dismiss or, in the alternative, a motion to require Krueger to post security for costs and attorney's fees incurred by Koley in defending this action. Kirkpatrick, Pettis, Smith, Polian, Inc., Davis, Couch and Wertz have also filed a motion to dismiss.

After studying the briefs submitted and considering the oral arguments of counsel, the Court believes that the motions to dismiss presently on file should be denied in part and granted in part. A consideration of each of the three counts contained within Krueger's complaint is necessary before an understanding of the propriety of this decision is attainable.

*Section 13(d)*

Section 13(d) of the Securities Exchange Act of 1934 requires beneficial owners of more than five per cent of a registered class of stock to file a statement with the S.E.C. within ten days of the date of acquisition. 15 U.S.C.A. § 78m(d) (Supp.1978). The detailed statement, which must also be sent to the offices of the issuing corporation, should contain the identity of the beneficial owners, the source and the amount of consideration used in making the purchase, and the number of shares owned. Information as to the existence of any contracts, arrangements, or understandings with the issuer must also be disclosed by the beneficial owners. Section 13(d) further requires, if the purpose of the acquisition is to obtain control of the business of the issuer of the securities, that the purchasers of the stock disclose

> any plans or proposals which such persons may have to liquidate such issuer, to sell its assets to or merge it with any other persons, or to make any other major change in its business or corporate structure . . .

15 U.S.C.A. § 78m(d)(1)(C) (Supp.1978).

Krueger asserts that the failure of the defendants to file a Section 13(d) statement can be challenged by the issuer of the stock in a court of equity. In their motions to dismiss, the defendants argue that no private cause of action exists to compel the filing of a Section 13(d) document. The sufficiency of the plaintiff's complaint is also drawn into question.

The heart of the argument that no private cause of action exists for failure to file a Section 13(d) statement lies in an interpretation of Section 18 of the Securities Act of 1934. That statute provides that anyone who makes a false statement in certain documents filed with the S.E.C. shall be liable only to persons "who, in reliance upon such statement, shall have purchased or sold a security at a price which was affected by such statement, for damages caused by such reliance . . . ." 15 U.S.C.A. § 78r(a) (1971). Section 13(d) statements fall within the protective remedies contained in Section 18.

While Krueger acknowledges that it is not a purchaser or seller within the meaning of Section 18, it argues that an implied cause of action exists under Section 13(d), and that the cause of action is maintainable by a stock issuer regardless of its status as a buyer or seller.

In the context of Section 13(a) annual reports and supplementary documents, actions for damages have been judicially limited to plaintiffs who have standing to proceed under Section 18(a). *In re Penn Central Securities Litigation,* 494 F.2d 528, 539–41 (3d Cir. 1974); *DeWitt v. American Stock Transfer Co.,* 433 F.Supp. 994, 1004–

05 (S.D.N.Y.1977); *Redington v. Touche Ross & Co.,* 428 F.Supp. 483, 489 (S.D.N.Y. 1977); *duPont v. Wyly,* 61 F.R.D. 615, 628 (D.Del.1973). Where a Section 13(d) report is involved, an action for damages is similarly limited to actual sellers and purchasers. *Myers v. American Leisure Time Enterprises, Inc.,* 402 F.Supp. 213, 214–15 (S.D. N.Y.1975), *aff'd* 538 F.2d 312 (2d Cir. 1976).

Restrictions upon the ability of an issuing corporation to obtain damages flowing from the failure to file a Section 13(d) document do not extend to prayers for injunctive relief. *GAF Corporation v. Milstein,* 453 F.2d 709, 719–20 (2d Cir. 1971), *cert. denied* 406 U.S. 910, 92 S.Ct. 1610, 31 L.Ed.2d 821 (1972); *Bath Industries, Inc. v. Blot,* 427 F.2d 97 (7th Cir. 1970); *Scott v. Multi-Amp Corp.,* 386 F.Supp. 44, 50 (D.N.J.1974) (derivative action). *See also Myers v. American Leisure Time Enterprises, Inc.,* 402 F.Supp. at 214. The Supreme Court's holding in *Rondeau v. Mosinee Paper Corp.,* 422 U.S. 49, 95 S.Ct. 2069, 45 L.Ed.2d 12 (1975), did not act to overturn this general rule. The *Rondeau* court considered the availability of equitable remedies to rectify a violation of Section 13(d) following recordation of the proper 13(d) schedule. The Supreme Court expressly held that it did not need to decide

> whether or under what circumstances a corporation could obtain a decree enjoining a shareholder who is currently in violation of § 13(d) from acquiring further shares, exercising voting rights, or launching a takeover bid, pending compliance with the reporting requirements. *Rondeau v. Mosinee Paper Corp.,* 422 U.S. at 59 n. 9, 95 S.Ct. at 2076.

Several lower courts have considered the standing of an issuer to obtain equitable relief since the ruling in *Rondeau.* Section 13(d) violations stemming from a failure to file the required statements can still be remedied by a corporate suit seeking an injunction pending observation of federal law. *General Aircraft Corp. v. Lampert,* 556 F.2d 90 (1st Cir. 1977); *Financial General Bankshares, Inc. v. Lance,* [1978] Fed. Sec.L.Rep. (CCH) ¶ 96,403 (D.D.C. April

27, 1978). In light of the continuing validity of equitable remedies where Section 13(d) statements have not been filed, the Court holds that Krueger is an appropriate plaintiff under these facts.

A determination that an issuing corporation has standing to file a suit involving the compilation and recordation of 13(d) schedules does not end the inquiry. The defendants have raised the further issue of Krueger's failure to allege the existence of facts constituting irreparable harm, a necessary element of any claim for injunctive relief. Citing such cases as *Universal Container Corp. v. Horwitz,* [1977] Fed.Sec.L.Rep. (CCH) ¶ 96,161 (S.D.N.Y. Sept. 6, 1977), the defendants maintain that, under the analysis in *Rondeau,* a private litigant must do more than allege a technical violation of the statute to establish irreparable harm.

The Court finds that both *Horwitz* and *Rondeau* are distinguishable. Both of those cases involved the untimely filing of 13(d) schedules that were not materially misleading. In fact, the *Horwitz* court recognized that some sort of injunctive remedy might be appropriate where no effort had been made to comply with Section 13(d). The purpose of such an injunction would be "to allow a corporation, its shareholders and investors—before a takeover might become a *fait accompli*—the opportunity to receive, and react to, information required to be disclosed under Section 13(d)." *Universal Container Corp. v. Horwitz* at ¶ 92,256.

■ Given the purpose of the statute, the defendants' argument that they have not been adequately apprised of the nature of the harm that Krueger has suffered becomes a double-edged sword. Section 13(d) was adopted to insure that a corporation and its shareholders are given adequate information about efforts to effect a shift in control of their companies. If the information is lacking, no informed decision can be made by those a shift in control affects the most. Krueger cannot allege specific facts constituting irreparable harm if such information is unavailable to it. Under such circumstances, the sole act of failing to file under Section 13(d) constitutes harm to the

plaintiff. In the context of a filed 13(d) statement that lacked material facts, the First Circuit has made the following observation:

As the very *raison d'etre* of Section 13(d) was thwarted by appellants' continued failure to disclose the statutorily required information, we discover no error in the decision that irreparable injury would occur to shareholders and the investing public if appellants were allowed to continue their activities without correcting and amplifying their Schedule 13D.

*General Aircraft Corp. v. Lampert*, 556 F.2d at 96–97.

■ Even though the Court holds that the failure to provide information under Section 13(d) is irreparable injury in and of itself, the defendants further fault the plaintiff's complaint for its lack of a specific allegation of "irreparable injury." The omission of these two words from Krueger's pleading is not fatal if "the plaintiff has made factual allegations which, accepted as true, state a basis for relief." *Winfrey v. Brewer*, 570 F.2d 761, 765 (8th Cir. 1978). Krueger's failure to include these two words in its complaint does not diminish the fact that the first count of the complaint does allege defendants' failure to file a Section 13(d) statement. The defendants can scarcely claim undue prejudice or surprise because of this technical omission. No "insuperable bar to relief" exists in this case. *Bramlet v. Wilson*, 495 F.2d 714, 716 (8 Cir. 1974); *McAndrews v. Goody Co.*, 460 F.Supp. 104, 107 (D.Neb.1978). Although the pleading might have been more artfully drafted, the claim in count one of Krueger's complaint is adequate and states a cause of action for equitable relief.

*Pendent Claim under Wisconsin Law*

In the second count of its complaint, Krueger alleges a violation of Wisconsin's corporate takeover law. This statute, which is found at Wis.Stat. § 552.01 *et seq.*, contains reporting requirements similar to those contained with Section 13(d) of the Securities Act of 1934. This state law has no express language authorizing a private cause of action. Nor has any Wisconsin court considered whether a "target company", as defined in Wis.Stat. § 552.01(6), has an implied right to file an equitable suit to remedy the failure of beneficial owners of more than five per cent of any class of outstanding stock to file a statement with the state commissioner of securities.

■ A federal court has the power to entertain state law claims when federal causes of action are present and both portions of the complaint "derive from a common nucleus of operative fact." *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). *Accord, Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). Typically, the power is exercised when, in a court's judgment, the convenience of the parties would be served and judicial economy would be promoted. *Network Project v. Corporation for Public Broadcasting*, 183 U.S.App.D.C. 70, 561 F.2d 963 (1977), *cert. denied* 434 U.S. 1068, 98 S.Ct. 1247, 55 L.Ed.2d 770 (1978). One further factor that can be properly considered is whether the state law claim is one of first impression. *Grey v. European Health Spas, Inc.*, 428 F.Supp. 841 (D.C.Conn.1977). Where the proper resolution of the state law question is unclear, a federal court may properly decline to address the pendent issue. *Aiello v. City of Wilmington*, 426 F.Supp. 1272 (D.C.Del.1976); *Kerby v. Commodity Resources, Inc.*, 395 F.Supp. 786 (D.Colo.1975). The uniqueness or complexity of state law issues should be considered prior to an exercise of federal jurisdiction. *Maltais v. United States*, 439 F.Supp. 540 (D.C.N.Y.1977).

■ The Court believes that an exercise of federal jurisdiction over the cause of action based upon the Wisconsin statute would be inappropriate in this case. Although a determination of the matter in this Court might serve the convenience of the parties, a number of policies and practical considerations suggest that the state law claims should be adjudicated by the courts of the State of Wisconsin. Foremost among these reasons is the lack of a need to

address the state claim. Even if Krueger were correct in its contention that an implied cause of action in favor of a "target company" exists under Wisconsin's corporate takeover statute, all of the information that must be disclosed on the state form would be contained in a federal statement required by Section 13(d). Needless decisions of state law are to be avoided. *Grogg v. General Motors Co.*, 444 F.Supp. 1215 (D.C.N.Y.1978). The lack of a significant reason to resolve the question for purposes of this litigation is compounded by the fact that, as previously stated, the matter is one of first impression. Moreover, this Court is ill-equipped, given its limited access to the pertinent state legislative history and other research materials, to analyze the intentions of the Wisconsin legislature when this law was passed and decisional trends in the Wisconsin courts.

For all of these reasons, the Court declines to exercise pendent jurisdiction over the second count of the plaintiff's complaint.

*Section 10(b) and Rule 10b–5*

The third count of Krueger's complaint contains the following paragraph:

Upon information and belief, subsequent to the date on which they should have filed but did not file the statements required by Section 13(d) of the Securities Exchange Act of 1934 and by Wis.Stat. § 552.03, the defendants and members of their group entered into purchases and sales of KRUEGER stock. By failing to disclose to KRUEGER and to the Securities and Exchange Commission and to the Wisconsin Commissioner of Securities, and hence to the shareholders of KRUEGER and the investing public generally, the fact that the defendants and others owning a significant percentage of KRUEGER common stock had formed a group for the purpose of effecting a shift in, or influencing, the control of KRUE-GER and the other facts which would have been disclosed by proper filings, the defendants have through use of means and instrumentalities of interstate commerce

or the mails, employed a device, scheme and artifice to defraud KRUEGER and its stockholders in connection with said purchases and sales of KRUEGER stock in violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, and Rule 10b–5 promulgated thereunder.

■ Squarely before the Court is the question of whether an issuer of stock must allege that it was a purchaser or a seller of its securities in order to maintain an action under the federal anti-fraud statute. Although neither Section 10(b) of the 1934 Act nor Rule 10b–5 require that a litigant seeking to obtain a private remedy must allege a certain status, federal courts have limited the permissible classes of plaintiffs to those who actually participate in a sale of the shares. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975); *Birnbaum v. Newport Steel Corp.*, 193 F.2d 461 (2d Cir. 1952), *cert. denied* 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952).

Krueger maintains that *Blue Chip Stamps* and *Birnbaum* are distinguishable in that they both involved actions for damages rather than prayers for injunctive relief. Cases antedating *Blue Chip Stamps* are relied upon to demonstrate an exception to the purchaser-seller rule where equitable relief is sought. *See, e. g., Vincent v. Moench*, 473 F.2d 430 (10th Cir. 1973); *Kahan v. Rosenstiel*, 424 F.2d 161 (3d Cir. 1970), *cert. denied* 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290 (1970); *Britt v. Cyril Bath Co.*, 417 F.2d 433 (6th Cir. 1969). *See also Manor Drug Stores v. Blue Chip Stamps*, 492 F.2d 136, 145 (9th Cir. 1973) (dissenting opinion of Hufstedler, J.) (purchaser-seller rule has only peripheral relationship to injunctive suits), *rev'd* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975) (dissenting circuit opinion adopted).

The simple answer to Krueger's argument is that the Eighth Circuit did not recognize an injunction exception to the purchaser-seller rule prior to *Blue Chip Stamps*. In the case of *Greater Iowa Corp. v. McLendon*, 378 F.2d 783 (8th Cir. 1977), stockholders of the plaintiff corporation brought suit to enjoin the use of allegedly

fraudulent statements in solicitation materials for trust certificates. None of the plaintiffs had purchased any of the certificates prior to the initiation of the litigation. Without addressing the distinction between equitable and legal relief, the *McLendon* court held that the plaintiffs were not within the class of individuals that the statute was enacted to protect. *Greater Iowa Corp. v. McLendon*, 378 F.2d at 791. The Eighth Circuit is not alone in its adoption of this position. *GAF v. Milstein*, 453 F.2d at 721–22; *Financial General Bankshares, Inc. v. Lance* at ¶ 96,429–30.

This Court's adoption of the rule in *McLendon* does not foreclose an attainment of partial relief if the defendants are actually engaged in fraudulent and manipulative practices. An injunction prohibiting the defendants from further purchase of stock or from exercising the voting power associated with currently owned securities pending compliance with Section 13(d) would serve to prevent any change in control until the information sought in the first count of Krueger's complaint is available to the issuer and the stockholders.

The third count of the plaintiff's complaint shall be dismissed unless an amendment sufficient to confer standing upon Krueger is filed within ten (10) days of the date of the order filed contemporaneously with this Memorandum Opinion.