**SUNRAY DX OIL COMPANY, and J. H. Douma, R. E. Foss, R. Paul Henry, R. W. McDowell, L. G. Rodgers, and C. H. Wright, Appellants,**

v.

**HELMERICH & PAYNE, INC., John C. Priest, Andrew J. Musacchio and James Crum, Appellees.**

No. 10092.

United States Court of Appeals Tenth Circuit.

July 12, 1968.

agreement was not only arguable, but that it was correct.

———◆———

Edward J. Ross, New York City, (Truman B. Rucker, J. P. Greve, Tulsa, Okla., Stephen R. Lang, Alexandria, Va., Holme, Roberts & Owen and Donald C. McKinlay, Denver, Colo., on the brief) for appellants.

Thomas R. Brett and William R. Horkey, Tulsa, Okla., (Leon C. Gavras, Hudson, Wheaton & Brett and R. D. Hudson, Tulsa, Okla., on the brief) for appellees.

Brief submitted by Securities & Exchange Commission, Amicus Curiae.

Before LEWIS, HILL and SETH, Circuit Judges.

HILL, Circuit Judge.

The appeal is from an order granting a preliminary injunction, enjoining Sunray DX Oil Company and certain of its officers and directors from voting proxies executed by many of the stockholders of that corporation in connection with a proposed corporate merger of Sunray DX Oil Company and Sun Oil Company. We accelerated the appeal and took the case upon an emergency basis for the reasons reflected by this opinion. Regardless of the rather voluminous record made in the trial court the case presents a narrow and well defined single issue. Was the proxy statement sent to the stockholders false and misleading because of the omission of material facts?

Several years ago the Federal Government opened 110 off-shore tracts in the Santa Barbara Channel off the coast of California for leasing by competitive bids for oil and gas exploration. Sunray and other oil companies became interested and performed a large amount of exploratory work in the area preparatory to the submission of bids. The "Sunray group" was the successful bidder on February 6, 1968, as to Tract 401, with a bid of $38,380,032.[1]

Union Oil Company was the successful bidder for the lease on Tract 402, which adjoined Tract 401, with a bid of $61,418,000. It commenced drilling soon thereafter and on March 19, 1968, announced that it had made a "major oil discovery" in the first well drilled upon Tract 402; that it had drilled to a depth of 3,775 feet and the well was flowing at a rate of 1,800 barrels of crude oil per day with 27.8° gravity through a ½ inch bean; that in the drilling of the well over 1,000 feet of oil sand was encountered between 2,000 and 2,700 feet; that a second well being drilled on the tract was down to 3,500, had passed through 1,500 feet of oil sand and will be bottomed below 10,000 feet; and that two 60-well drilling platforms had been ordered. There was also other exploratory efforts being made in the area by other companies.

In January, 1968, Sunray and Sun reported to their respective stockholders a proposed merger agreement. On March 19 and 20, 1968, Sunray mailed to each

---

1. Sunray acquired a 32½% interest in the lease amounting to $12,500,000 and this represented approximately 1½% of its assets.

of its stockholders a notice of a stockholders meeting to be held on April 23, 1968, to vote on the merger and solicited voting proxies from those stockholders unable to personally attend the meeting.

The proxy statement, governed by Securities Exchange Commission (hereinafter referred to as S.E.C.) Rule 14(a)–9 omitted what was expected from the California off-shore venture but stated factually. "Sunray DX in partnership with three other companies acquired a 5,760 acre tract located off the shore of California near Santa Barbara at the February, 1968, Federal lease sale. Sunray DX has an undivided 32½% interest in the $38 million purchase and has been named as operator of the concession." This statement was submitted to the S.E.C. before it was sent to the stockholders.

Also, during March, 1968, Sunray mailed a copy of its 1967 Annual Report to each of its stockholders. In this report the following reference is made to the California off-shore activity. "Sunray DX and associates were successful bidders on a prize tract in the February 6, 1968, Federal California off-shore lease sale. The group had spent two years in preparation for this acquisition and Sunray expects the off-shore operation to make a substantial contribution to its future California production. Sunray owns a 32½% per cent interest in this venture and is the operator."

Appellees, as plaintiffs in the trial court, by their complaint, alleged in substance that they were stockholders in the Sunray Corporation; the proposed merger of the corporation; the mailing by Sunray of the notice of the meeting of stockholders to vote on the merger together with the solicitation, in writing, of proxies from the stockholders; that the proxy statement was materially false and misleading and omitted material facts necessary to make the statement not false or misleading. They specifically alleged that it failed to disclose that the $38.3 million paid for Tract 401 was $6,000,000 in excess of the previous high

bid for an off-shore lease; that the amount paid by Sunray was a part of a total bid of $603,204,264, which was the highest total sum ever received in an off-shore lease sale; and that Sunray Tract 401 is immediately adjacent to the Union Oil Company of California Tract 402 for which Union paid $61 million, the largest single bid in history. The prayer asked that Sunray be enjoined from holding the shareholders meeting set for April 23, 1968, and from completing the merger until after it had made full disclosure to its stockholders of all information as required by the Securities Exchange Act and the regulations promulgated thereunder. A temporary restraining order was issued by the court on April 22, 1968, restraining the consideration of the proposed merger at the annual stockholders meeting on April 23, and on May 9, a preliminary injunction issued enjoining Sunray and its officers from exercising or voting the proxies except for the purpose of adjourning or postponing corporate meetings of the stockholders. This is the order appealed from.

Appellees, both in their brief and oral argument, point to known facts concerning the oil development in the area where Tract 401 is located. This information pertains to the off-shore area, as a whole. and specifically to the Union Tract 402 and to Tract 298, which is being developed by the Phillips Company. They contend that this information was material in that it effected the value of the shares of stock in Sunray and, thus, the failure to include such information in the proxy statement was a violation of Rule 14(a) –9.

Appellants admit that they had acquired a great amount of information concerning the oil production potential of Tract 401. They had been exploring the area for four years prior to bidding on the Tract. They readily admit that they had exploratory information about the two adjacent tracts, 402 and 298, but contend that none of the tracts had reached a state of certainty as to the oil reserves underlying such tracts. Therefore, if such information had been con-

tained in the proxy statement, they would have violated S.E.C., Rule 14(a)–9.

It is difficult for us to find the precise reasoning which forms the basis for the injunction. We doubt if the order granting the preliminary injunction meets the requirements of Rule 65(d), F.R.Civ.P., because it fails to "set forth the reasons for its issuance," and is not "specific in terms." However, we do not propose to decide the controversy upon that technical ground but will look to the entire record to ascertain the contentions of the parties, the issues upon which the case was tried and the basis for the granting of the extraordinary relief.

From comments made by the trial judge to counsel at the hearing upon the issuance of the temporary restraining order, it appears he based that order on the failure of Sunray DX to advise the stockholders in the proxy statement of Union Oil's success on Tract 402. This is also apparent from what the judge said at the conclusion of the hearing but it is not reflected in the restraining order. During the hearing upon the preliminary injunction the trial judge, in his comments, suggested the deficiency in the proxy statement was the failure of Sunray to advise the stockholders of the increase in value of Tract 401. Later in the proceeding, he referred again to Sunray's failure to tell the stockholders what had happened concerning Tract 402.[2] We will not belabor this area of uncertainty because relying upon either or both factual reasons, the preliminary injunction must fall for lack of legal support.

Section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n, makes it unlawful, by use of the mails or by any other means of interstate commerce, to solicit proxies in contravention of the prescribed rules and regulations of the Securities Exchange Commission. Rule 14(a)–9, 17 C.F.R. § 240.14a–9, of

that Commission prohibits the solicitation of proxies by any statement written or oral, which is false or misleading with regard to any material fact "or which omits to state any material fact necessary in order to make the statements therein not false or misleading * * *." Among the various examples set out, by the Commission, following the rule of what may be considered as misleading is "(a) Predictions as to specific future market values, earnings, or dividends."

Within the oil and gas industry "oil reserves" is a term frequently used, and has a well defined meaning. The term denotes oil which has not been lifted from the ground, but which, it is believed can feasibly be produced. Such reserves are classified as "proved," "probable," and "possible," each also with an accepted and recognized meaning within the industry. "Proved reserves" has been defined as reserves which are considered proved to a high degree of certainty by production at commercial rates or by successful well tests made in conjunction with favorable and reliable core analysis date or quantitative log interpretation. J. Arps, 14 Journal of Petroleum Technology 724 (1962). Although all three classifications are only within the realm of speculation, the Securities and Exchange Commission permits disclosure only when such reserves are within the "proved" category. T. White, "Handling of Disclosures as to Reserves for the S.E.C.;" Society of Petroleum Engineers Paper No. 971 (1964); Great Sweet Grass Oils, Ltd., 17 S.E.C. 683 (1957).

The Securities and Exchange Commission has been permitted to file a brief amicus curiae in the case here. That brief has given us enlightenment as to the policy of the Commission in regard to oil company proxy statements and the reasons underlying such policy. There,

---

2. "THE COURT: And I have said all along in this that it is the Court's contention on the material omission that it has nothing to do with 401. Any omission in failing to tell the stockholders what happened to 402, which is contiguous to 401, and that for them to weigh for themselves whether or not it should influence their vote. Now, that's all I'm talking about."

we are told that "The Commission has always been very careful in its scrutiny of statements on oil reserves because their proper evaluation requires a type of knowledge seldom possessed by those outside of the petroleum industry." The brief further points out "it is altogether probable that investors unfamiliar with the technical aspects of the oil and gas business—and these would likely include most shareholders of major oil companies such as here involved—would ignore or misconstrue the technical but extremely significant difference between "proved" and "probable" oil reserves. Investors might well regard the two as interchangeable, which they definitely are not, and would attribute to any numerical estimates of probable reserves a degree of certainty which is not warranted." To us this seems to be a prudent policy and one that protects the ordinary investor. Any statement concerning "oil reserves" other than in the category of the "proved" could certainly be misleading to any investor other than one who is an expert in the industry.

As we have pointed out, there is indication in the record that the trial judge believed Sunray had a legal duty to include in the proxy statement the available information concerning the development of Tract 402. It may be true that development by Union of this adjacent tract provided additional information to Sunray concerning the worth of Tract 401, but at the most, it was only information from which experts could make estimates of reserves or refine their previous estimates. Such information did not put the oil reserves, if any, in the proved category. At the time the proxy statement went out, even the reserves on Union Tract 402 were not in the proved category, the well was being tested and showed great probabilities but actual production from the well had not commenced.

The S.E.C. in its amicus brief suggests that the inclusion of the claimed omitted information conceivably could be allowable. The fact that Sunray could conceivably have included the information, however, does not make its exclusion misleading to the extent that the proxy solicitation was invalid. The information gained by the 402 wells and the exploration on 298 was strictly cumulative to the extensive mass of information developed by Sunray to enable it to bid for the purchase of Tract 401. If exclusion of information of the wells was misleading then there is no reason to think that the exclusion of the remainder of the information held by Sunray would not also be misleading, not only concerning Tract 401 but every other tract which Sunray was in the process of developing or had geological information about. Such disclosure would in the first place make the proxy statement impossibly large and in the second place would be disclosing to the average investor, who has no capacity to judge the scientific significance of the information, material which would not be in the least beneficial in making an enlightened judgment about the proxy solicitation.

Some comment should be included here about appellees' contention that the trial court's findings of fact are supported by the evidence and under Rule 52, F.R.Civ. P., this court is compelled to accept them. The pertinent findings pertain to the oil reserves underlying Tract 401 and the adjacent area and the computation of the value of Tract 401 from these oil reserves. These findings are based on expert testimony adduced by appellees and such testimony is in sharp conflict with other expert testimony in the case. This conflict, in itself, shows that these claimed omitted material facts are clearly within the realm of uncertainty and that the underlying oil reserves are not within the "proved" category. The making of these findings by the trial court was neither improper nor clearly erroneous but it does not make them material facts removed from the realm of uncertainty, thus compelling Sunray to include them in the proxy statement.

From the brief filed by S.E.C., it is apparent that those in authority within

the Commission are fully cognizant of the facts and circumstances surrounding this controversy. In its supervisory role, it had been in touch with the situation with which we are concerned. We must therefore conclude that Sunray, by its proxy statement, did not make any false or misleading statement or fail to "state any material fact necessary to make the statements therein not false or misleading." Had Sunray included in the proxy statement any of the material suggested by appellees it may have been in violation of S.E.C., Regulation 14(a).

As stated by our order of June 17, 1968, the preliminary injunction issued by the trial court has been vacated and set aside and the case was remanded to the trial court for such further proceedings, if any, as may be appropriate.