429 F.2d 795
 E. F. ERLING, Individually and on Behalf of All Other Similarly Situated Former Shareholders of the National Life of America, Appellant,
v.
F. C. POWELL, D. D. Powell, H. H. Helgerson and Stockman National Life Insurance Company, a Corporation, Appellees.
 No. 19780.
 United States Court of Appeals, Eighth Circuit.
 July 29, 1970.
 
 George A. Bangs, of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, S. D., for appellant; Chandler L. Beach, of Benson, Beach & Fingerson, Huron, S. D., on the brief.
 Robert C. Heege and Lawrence L. Piersol, Davenport, Evans, Hurwitz & Smith, Sioux Falls, S. D., for appellees.
 Before MEHAFFY, HEANEY and BRIGHT, Circuit Judges.
 BRIGHT, Circuit Judge.
 
 
 1
 Plaintiff Erling, individually and as representative of other minority shareholders, filed an action for damages under § 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b) and SEC Rule 10(b)-5, 17 CFR § 240.10(b) (5),[1] claiming that the defendants, F. C. Powell, D. D. Powell, and H. H. Helgerson (the Powells) defrauded minority shareholders of National Life of America (National Life), a South Dakota corporation, in a sale of the controlling bloc of National Life[2] stock to a third party, not joined in the action. The federal district court, the Honorable William C. Hanson,* rejected Erling's claim that his action fell within the ambit of § 10(b) and Rule 10(b)-5 and, on motion, entered a final judgment of dismissal. Erling appeals.
 
 
 2
 The principal question presented to us is whether Erling, although neither a buyer nor seller of securities in the allegedly fraudulent transactions, is entitled to bring this action under the pertinent statute and SEC rule. We think not and affirm dismissal of the action.
 
 
 3
 Stripped of its surplusage and redundancy, Erling's complaint, as material to this appeal, alleges that the Powells owned and exercised control over the majority of common stock of National Life prior to June 2, 1961. On that date, pursuant to a sales agreement for purchase of their control stock, they turned over direction and control of National Life to Intercontinental Corporation, a Texas company controlled by James S. Shively and his associates (Shively). Erling alleges that prior to final consummation of the sale, the Powells learned that Shively intended to deal fraudulently and dishonestly with National Life's assets; that, thereafter, the Powells instituted an action in the South Dakota state court to enjoin Shively's fraud, but subsequently dismissed the action and consummated the sale; and that Shively wasted corporate assets causing damage to National Life and to those owning minority stock in the corporation on June 1, 1962, the date on which the Powells received final payment for their stock.
 
 
 4
 In separate counts, Erling also seeks damages on behalf of minority shareholders measured by the premium in excess of fair market value that the Powells received for their control stock; such amount said to have unjustly enriched the Powells at the expense of minority stockholders. Further, Erling seeks to hold the Powells liable for damages resulting from their purchase of shares of stock from other National Life shareholders between June 19, 1957, and December 3, 1960, at an advantageous price, instead of making that opportunity available to National Life.
 
 
 5
 Initially, we note that although § 10(b) and its concomitant SEC rule do not expressly create a private right of action, the courts have long implied such a right. See Mills v. Electric Auto-Lite Co., 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed. 2d 593 (1970); S.E.C. v. National Securities, Inc., 393 U.S. 453, 467 n. 9, 89 S. Ct. 564, 21 L.Ed.2d 668 (1969); J. I. Case Co. v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964); see also City National Bank of Fort Smith, Arkansas v. Vanderboom, 422 F.2d 221 (8th Cir.), cert. denied, 399 U.S. 905, 90 S.Ct. 2196, 26 L.Ed.2d 560 (June 23, 1970); Greater Iowa Corporation v. McLendon, 378 F.2d 783, 789-791 (8th Cir. 1967); see generally 6 L. Loss, Securities Regulation 3871 (1969). The terms of the statute, of course, measure the implied right of action flowing therefrom.
 
 
 6
 Our discussion begins with Birnbaum v. Newport Steel Corp., 193 F.2d 461 (2d Cir.), cert. denied, 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952), the landmark case concerning those who qualify as plaintiffs to sue under § 10(b) — Rule 10(b)-5. In Birnbaum, the president and controlling shareholder of Newport Steel Corporation, Feldman, refused an opportunity to merge Newport with another company on terms favorable to all shareholders of Newport and then sold his control shares at a premium price to a third party. Birnbaum, a minority shareholder, labeled Feldman's transaction fraudulent and sought damages in a class action and derivative suit under Rule 10(b)-5. The Second Circuit dismissed, holding that the statute and rule authorize actions by only buyers and sellers of securities, summarizing:
 
 
 7
 [A]ppellants argue that such an interpretation of the Rule is too narrow to carry out the broad purpose of the Act to protect investors "from exploitation by corporate insiders." See Hearings before Senate Comm. on Banking and Currency on S.Res. 84, 56 and 97, 73d Cong., 1st Sess., pp. 6456-6. We do not doubt that Congress was at least partially motivated by such a purpose in enacting the Securities Exchange Act of 1934, 15 U.S.C.A. § 78a et seq. However, the precise question here is whether Section 10(b) of that Act and the Commission's Rule X-10B-5 were the means chosen to further that end, and we are of the opinion that the legislative "history" and "purpose" quoted by appellants are not persuasive that they were. When Congress intended to protect the stockholders of a corporation against a breach of fiduciary duty by corporate insiders, it left no doubt as to its meaning. Thus Section 16(b) of the Act of 1934, 15 U.S. C.A. § 78p(b), expressly gave the corporate issuer or its stockholders a right of action against corporate insiders using their position to profit in the sale or exchange of corporate securities. The absence of a similar provision in Section 10(b) strengthens the conclusion that that section was directed solely at that type of misrepresentation or fraudulent practice usually associated with the sale or purchase of securities rather than at fraudulent mismanagement of corporate affairs, and that Rule X-10B-5 extended protection only to the defrauded purchaser or seller, 193 F.2d at 463-464.[3]
 
 
 8
 The Second Circuit continues to follow Birnbaum; its most recent affirmations coming in Iroquois Industries, Inc. v. Syracuse China Corporation, 417 F.2d 963, 966 (1969), cert. denied, 399 U.S. 909, 90 S.Ct. 2199, 26 L.Ed.2d 561 (June 23, 1970), and Greenstein v. Paul, 400 F.2d 580, 581 (1968). That court, however, utilizes a broad brush in characterizing persons as "buyers" or "sellers" of securities. See Crane Company v. Westinghouse Air Brake Company, 419 F.2d 787 (1969) (tender offerer frustrated by defendant's market manipulations entitled to standing); Vine v. Beneficial Finance Company, 374 F.2d 627, cert. denied, 389 U.S. 970, 88 S.Ct. 463, 19 L. Ed.2d 460 (1967) (minority shareholders of corporation required to sell at specified price by fraudulent tender offer creating "short-form merger" qualify as "forced sellers"); A. T. Brod & Co. v. Perlow, 375 F.2d 393 (1967) (stockbroker, victimized by customer's deceptive plan to order but not pay for securities in case of a bear market, qualifies for Rule 10(b)-5 relief as a non-investor forced to purchase securities); Ruckle v. Roto American Corporation, 339 F.2d 24 (1964) (corporation's issuance of shares of stock qualifies it as seller). By so doing, the Second Circuit seems to have broadened the initial dimensions of the Birnbaum "purchaser-seller" limitation to encompass persons, other than buyers or sellers of securities in the ordinary sense, who demonstrate direct damage from a particular species of securities fraud which the Congress clearly intended to prohibit by its enactment of § 10(b).
 
 
 9
 Recently, the Third Circuit reviewed and analyzed the Birnbaum doctrine and concluded, following the Second Circuit's latest decision in Crane, supra, 419 F.2d 787, that:
 
 
 10
 Neither the language of § 10(b) and Rule 10b-5 nor the policy they were designed to effectuate mandate adherence to a strict purchaser-seller requirement so as to preclude suits for relief if a plaintiff can establish a causal connection between the violations alleged and plaintiff's loss. * * * The Act was designed to eliminate deceptive and unfair practices in security trading and to protect the public from inaccurate, incomplete and misleading information. The thrust of the Act and the decisions interpreting it is to give the investing public the opportunity to make knowing and intelligent decisions regarding the purchase or sale of securities. Kahan v. Rosenstiel, 424 F.2d 161, 173 (1970).[4]
 
 
 11
 This circuit has expressed agreement with the Birnbaum purchaser-seller limitation under Rule 10(b)-5 on three occasions. City National Bank of Fort Smith, Arkansas v. Vanderboom, supra, 422 F.2d 221, and its companion Vanderboom v. Sexton, 422 F.2d 1233 (1970); Greater Iowa Corporation v. McLendon, supra, 378 F.2d 783.
 
 
 12
 In McLendon, directors and controlling shareholders of the Greater Iowa Corporation, alleging violations of SEC Rule 10(b)-5 and other provisions of both the 1933 and 1934 securities enactments, sought injunctive relief against a group of minority shareholders attempting to organize other minority shareholders into a voting trust for the purpose of exercising greater influence over corporate business policies and activity. Sustaining summary dismissal of the complaint, Judge Gibson commented:
 
 
 13
 Rule 10b-5 specifically provides protection only in connection with the purchase and sale of the security. * * * As plaintiffs are neither purchasers or sellers of the allegedly fraudulent security and were not the parties defrauded by a purchase or sale, they are not within the class afforded protection under the Act and implementing Rule and consequently have failed to state any cause of action for violation of § 10(b) of the 1934 Act. 378 F.2d at 791.
 
 
 14
 In City National Bank, a number of investors borrowed funds from an Arkansas bank in order to invest in an Arkansas corporation which in turn purchased control stock in another corporation engaged in business in Arkansas. When the bank sued to collect on the borrowers' notes, the borrowers urged in a counterclaim based on § 10(b) and Rule 10(b)-5 that the lending institution participated in fraudulent misrepresentations inducing the corporate purchase of stock. The court acknowledged that strict application of the purchaser-seller standing limitation worked hardship and that "* * * courts have fashioned mitigating doctrines granting standing to plaintiffs who are not technically purchasers or sellers of securities." 422 F. 2d at 228. Summary dismissal of the counterclaim was sustained, however, on the ground that the cause of action for fraud under 10(b)-5, if any, rested in the corporate purchaser, not in those investing in the purchasing corporation. This court recognized the investors might seek relief through a derivative suit on behalf of the corporation.
 
 
 15
 In determining whether the district court's dismissal should stand here, we examine the complaint to determine whether its allegations broadly construed assert any set of facts entitling plaintiff to relief. See Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed. 2d 80 (1957); Springfield Television v. City of Springfield, 428 F.2d 1375 (8th Cir., June 23, 1970).
 
 
 16
 Neither Erling individually, the minority shareholders he purports to represent, nor the corporation — National Life — participated in the capacity of "purchaser" or "seller" in the allegedly fraudulent sales of National Life stock. Thus, plaintiff clearly fails to meet the test of Birnbaum, supra, as originally enunciated. Similarly, Erling demonstrates no basis for qualifying for standing as a Rule 10(b)-5 plaintiff under relaxed standards which permit plaintiffs who are not buyers or sellers of securities in a technical sense to sue upon showing damages flowing from misrepresentation, deception or market manipulations by a buyer or seller of securities. See Kahan, supra, 424 F.2d 161; Crane, supra, 419 F.2d 787; Vine, supra, 374 F.2d 627. Erling does not claim that the Powells, as sellers, defrauded Shively, as buyer; nor does he contend that defendants victimized minority National Life shareholders in purchasing the latters' shares during a period prior to December 3, 1970. In one count, Erling seeks to recoup losses attributable to the mismanagement of the subject corporation by the Shively group. In two other counts, he seeks to acquire a portion of the gain which defendants obtained in the sale of control stock to Shively and obtained earlier in their purchase of corporate stock at an advantageous price from other shareholders. In essence, Erling's claims rest upon an alleged breach of fiduciary duty owing the corporation and other shareholders of National Life, not deception practiced in actually buying or selling securities. Such claims do not fall within the ambit of § 10(b) or Rule 10(b)-5. If cognizable at all, they must be presented to a state court.[5]
 
 
 17
 The plaintiff's complaint alleges no statutory basis to maintain this action under § 10(b) and Rule 10(b)-5, and we hold the district court properly dismissed the complaint.
 
 
 18
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 Section 10(b) reads:
 "It shall be unlawful for any person, directly or indirectly by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange —
 * * * * *
 (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." 48 Stat. 891 (1934), 15 U.S.C. § 78j(b) (1964).
 The supplementing rule reads:
 "It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
 (a) To employ any device, scheme, or artifice to defraud,
 (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
 (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security." 17 CFR § 240.10(b) (5) (1969).
 Section 27 of the Securities and Exchange Act of 1934, 15 U.S.C. § 78aa, confers exclusive jurisdiction upon federal courts to enforce any liability created by the Act or by its rules.
 
 
 [2]
 National Life has merged into Stockman Life Insurance Company. Plaintiff named the latter as a nominal defendant
 
 
 *
 United States District Judge for Iowa, sitting by designation
 
 
 [3]
 Professor Loss characterizes the historical version of the legislative history contained inBirnbaum, supra, as "accurate". 6 L. Loss, Securities Regulation 3617 (1969). Erling offers no challenge to its accuracy; our research discloses none.
 
 
 [4]
 For other cases supporting a less vigorous application of the buyer-seller limitation inBirnbaum see, e. g., Britt v. Cyril Bath Company, 417 F.2d 433, 436 (6th Cir. 1969); Mutual Shares Corporation v. Genesco, Inc., 384 F.2d 540 (2d Cir. 1967).
 
 
 [5]
 SeeIroquois, supra, 417 F.2d at 969; Mutual Shares, supra, 384 F.2d at 545-546; Birnbaum, supra, 193 F.2d at 464; 6 L.Loss, Securities Regulation 3631-3645 and cases cited therein.