336 F.Supp. 434 (1971)
Marjorie N. ROSS et al., Plaintiffs,
v.
LONGCHAMPS, INC., a corporation, et al., Defendants.
No. 71 C 290(4).
United States District Court, E. D. Missouri, E. D.
December 15, 1971.
*435 Slonim & Ross, Clayton, Mo., for plaintiffs.
Walter M. Clark and Thos. E. Wack, Armstrong, Teasdale, Kramer & Vaughan, St. Louis, Mo., for defendant Robert S. Hall.
Don O. Russell, St. Louis, Mo., for defendant J. R. Engle.
Gray, Stewart & Fletcher, Clayton, Mo., for defendant Wm. Huber.
Bryan, Cave, McPheeters & McRoberts, St. Louis, Mo., for defendant Steak n Shake, Inc.
Greensfelder, Hemker, Wiese, Gale & Chappelow, St. Louis, Mo., for defendants H. Leonard and Ed C. Roark.

MEMORANDUM
WANGELIN, District Judge.
This matter is before the Court on joint and separate motions of the defendants to dismiss the amended complaint; to quash service of process; to transfer, to consolidate or stay these proceedings; and on motion of plaintiffs to join Franklin Corporation as a party defendant, for production and depositing *436 of documents and funds in the registry of the court; and for injunctive, declaratory and other relief.
Plaintiffs, minority shareholders in Steak n Shake, Inc., filed a three-count amended complaint on May 26, 1971. Counts I and II purport to be stockholder derivative suits on behalf of Steak n Shake, Inc., brought pursuant to Rule 23.1, Federal Rules of Civil Procedure and allege jurisdiction under § 27 of the Securities Exchange Act of 1934, 15 U. S.C. § 78aa. Count II purports to be both a stockholders' derivative claim and a class action on behalf of all other shareholders of Steak n Shake similarly situated. No basis of jurisdiction is asserted under Count III, although it appears that plaintiffs claim pendent jurisdiction as to Count III. There is no allegation of diversity of citizenship under any count and complete diversity is lacking in that plaintiffs claim to be citizens of Missouri and two of its named defendants are Missouri citizens.
At the time this action was commenced, Longchamps, Inc. owned approximately 53% of the outstanding common stock of Steak n Shake, and the individual defendants were members of the Board of Directors of Steak n Shake and several of the individual defendants were also members of the Board of Directors of Longchamps, Inc.
Count I alleges that the defendants conspired together for the purpose of selling certain restaurant equipment and certain "Steak n Brew" franchises to Steak n Shake at sites in Illinois, Florida, and three locations to be determined, in violation of § 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder. The alleged facts constituting the violation are that since Longchamps acquired 53% interest in Steak n Shake, it has had voting control and has dominated and controlled the election of the Steak n Shake board of directors, its officers, and its policies; that defendants Ellman, Davis and Kramer (interlocking directors) exerted their controlling influence to consummate transactions to the benefit of Longchamps and to the detriment of Steak n Shake. Plaintiffs claim that the sales of equipment and franchises were without genuine consideration to Steak n Shake which paid $50,000.00 cash and executed promissory notes in the amount of $500,000.00 to Longchamps for the franchises and paid Longchamps $37,250.00 cash for the equipment. Plaintiffs allege defendants acted in breach of their fiduciary duties, resulting in profit to defendants and in depletion of the cash assets of Steak n Shake.
Under Count I, plaintiffs seek appointment of a receiver to seize and hold defendants' interests in Steak n Shake, an accounting of the monies obtained by the alleged scheme to defraud, a separate accounting of sums allegedly misappropriated, actual damages of $1,000,000.00, rescission of all contracts between Longchamps and Steak n Shake, an injunction, punitive damages and costs and attorney's fees.
COUNT II is based on Section 14 of the Securities Act of 1934 and Rule 14a-9 thereunder. Plaintiffs allege that defendants approved a by-law amendment providing for indemnification of themselves; that they caused a notice and a proxy statement to be mailed to all stockholders for a special stockholders meeting for the consideration of said amendment and for the election of a Board of Directors. Plaintiffs further allege that the amendment was self-serving, fraudulent, illegal and improper on its face; and perpetuated the self dealing of those in control of Steak n Shake; that the notice and proxy materials contained false and misleading statements and omissions of material facts; and that the amendment was unlawfully passed with the favorable votes of shareholders from whom proxies had been unlawfully solicited, together with the favorable vote of the 53% majority shareholder, defendant Longchamps.
In Count II, plaintiffs seek a declaratory judgment that the by-law amendment is void and the election of the Board of Directors is invalid, and an accounting *437 of all monies expended with respect thereto, attorneys fees and costs.
Count III is based on common law fraud, deceit and conspiracy. Plaintiffs allege that defendant Longchamps wrongfully and unlawfully pledged its 53% interest in Steak n Shake as security for a $7,000,000.00 loan, and agreed not to permit Steak n Shake to pay dividends as a condition of the loan. Plaintiffs seek an order compelling the payment of dividends in an amount equal to the dividends which would have been paid but for the alleged wrongful acts, attorneys fees and costs.
Plaintiffs have filed a motion in which they assert that while other motions in this cause were pending, the defendant Longchamps entered into an agreement to sell and has sold its 53% interest in Steak n Shake to Franklin Corporation based in Indianapolis, Indiana. Plaintiffs state that the consideration for the sale is believed to be $8,500,000.00; and that at the same time, the members of the Steak n Shake Board of Directors who represented Longchamps resigned and control was taken over by Franklin Corporation.
Plaintiffs state that on September 21, 1971, the newly constituted Board of Directors declared a "regular quarterly dividend", resuming the declaration of dividends. Further, as a condition to the sale, Longchamps reportedly purchased from Steak n Shake for $550,000.00 the "Steak n Brew" restaurants and franchises of Steak n Shake. In accordance with the purchase, Steak n Shake received a $500,000.00 note from Franklin and a $50,000.00 note from Longchamps.
On the basis of the above facts, plaintiffs seek to join Franklin Corporation as a party defendant, and to require Longchamps and Franklin Corporation to produce and to deposit all documents, funds, certificates or evidence relating to the facts set out above in the registry of the Court; and to enjoin Longchamps and Franklin from proceeding under or implementing their agreement; and to impress a lien upon the subject matter of the transactions described above.
Franklin Corporation will not be ordered joined. The present complaint, on its face, shows that at the time of the violations alleged therein, Franklin Corporation was not involved in any way with the parties to this action. If plaintiffs desire to state a claim against Franklin Corporation, they must amend the complaint or file a new complaint as to Franklin Corporation.
The materials which plaintiffs seek to have deposited in the registry of this Court will not be ordered deposited. The plaintiffs have stated that they will not post a bond with respect thereto. In addition, the transactions to which the materials relate are not properly before this Court on the existing complaint.
With respect to plaintiffs' motion to produce documents, plaintiffs are directed to Rule 34, F.R.C.P., which provides for production upon request, and not by motion.
Similarly, the injunctions sought by plaintiffs' motion are not properly considered by this Court on the basis of the parties named and the allegations contained in the present complaint.
Accordingly, plaintiffs' motion to join party defendant, for production and depositing of documents, for depositing of funds in the registry of the court, for injunctive, declaratory and other equitable relief is denied.
However, in connection with plaintiffs' motion, the plaintiffs concede that the rescission sought in Count I has been accomplished and is moot, but plaintiffs deny that restitution has been accomplished.
The various motions of the defendants are primarily directed to four issues: (1) the subject matter jurisdiction of this court; (2) the stockholders derivative action aspect of this cause under Rule 23.1 and the class action aspect under Rule 23; (3) the personal jurisdiction of this court over defendants Ellman, *438 Lewis, Davis, Kramer and Longchamps; and (4) the propriety of staying these proceedings. The motion of defendant Steak n Shake to consolidate this action with a prior-filed action in this division will not be considered herein because Rule VII(d) of the local rules of this court require that the motion be filed in the case first filed.
Several of the defendants challenge the subject matter jurisdiction of this court as to Count I on the basis that plaintiffs lack the requisite standing to sue and the facts as alleged are outside the coverage of § 10(b) of the Act and Rule 10b-5 thereunder.
The Rule 10b-5 standing question arises from the language of Section 10(b) and Rule 10b-5, both of which prohibit violations "directly or indirectly . . . in connection with the purchase or sale of any security." The most well-known case interpreting the language is Birnbaum v. Newport Steel Corporation, 193 F.2d 461 (2nd Cir. 1952). The Birnbaum doctrine is generally expressed as the requirement that the plaintiff must be a "purchaser" or "seller" of "securities", but has led to a diversity of result by various courts. See, e.g. Erling v. Powell, 429 F.2d 795 (8th Cir. 1970); City National Bank of Fort Smith, Arkansas v. Vanderboom, 422 F.2d 221 (8th Cir. 1970); Rekant v. Desser, 425 F.2d 872 (5th Cir. 1970); Simmons v. Wolfson, 428 F.2d 455 (6th Cir. 1970); Herpich v. Wallace, 430 F. 2d 792 (5th Cir. 1970); Iroquois Industries, Inc. v. Syracuse China Corp., 417 F.2d 963 (2nd Cir. 1969); Crane Co. v. Westinghouse Air Brake Co., 419 F.2d 787 (2nd Cir. 1969); Mutual Shares Corp. v. Genesco, Inc., 384 F.2d 540 (2nd Cir. 1967).
Section 3(a)(10) of the 1934 Act, 15 U.S.C. § 78c(a)(10) exempts from the definition of "securities", promissory notes with an initial maturity of nine months or less and their renewals.
The securities referred to in Count I are the promissory notes allegedly executed by Steak n Shake and payable to Longchamps for the purchase of two Steak n Brew restaurants. Plaintiffs state that of the total notes executed, notes totalling $37,500.00 matured in more than nine months, and defendants acknowledge that certain of the notes exceeded nine months in length.
Therefore, under Section 3(a) (1) and (10) of the 1934 Act, 15 U.S.C. § 78c(a)(1) and (10), Count I refers to "securities". However, plaintiffs must be the "purchaser" or "seller" of the securities.
Under Count I, plaintiffs as individual shareholders, or as representatives of the class of minority shareholders, would lack standing to sue under Rule 10b-5. Erling v. Powell, supra; City National Bank of Fort Smith, Arkansas v. Vanderboom, supra. But here, plaintiffs filed a derivative action for the benefit of Steak n Shake alleging that Steak n Shake sold its notes to defendant Longchamps as a part of an alleged scheme to defraud, thereby injuring minority interests, an approach sustained by the Fifth Circuit in Rekant v. Desser, supra and Herpich v. Wallace, supra.
The Court of Appeals for the Eighth Circuit has expressed agreement with the strict Birnbaum purchaser-seller limitation under Rule 10b-5 in City National Bank of Fort Smith, Arkansas v. Vanderboom, supra; Greater Iowa Corporation v. McLendon, 378 F.2d 783 (8th Cir. 1967); and in the recent case of Erling v. Powell, supra. The Eighth Circuit Court has not ruled upon the question of whether investors who are not purchasers or sellers can seek relief on behalf of the corporation who is the purchaser or seller. However in City National Bank, the court dismissed a Rule 10b-5 counterclaim by borrowers, who alleged that the bank participated in fraudulent misrepresentations inducing the corporate purchase of stock, by strict application of the purchaser-seller requirement, but recognized that the investors might seek relief through a derivative suit on behalf of the corporation. See, also, Schoenbaum v. Firstbrook, 405 F.2d 215 (2nd Cir. 1968), *439 cert. denied Manley v. Schoenbaum, 395 U.S. 906, 89 S.Ct. 1747, 23 L.Ed.2d 219 (1969).
It is the opinion of the Court that plaintiffs, who are not purchasers or sellers may nevertheless seek relief on behalf of Steak n Shake under Rule 10b-5, if Steak n Shake is a purchaser or seller of securities within the meaning of § 10(b) and Rule 10b-5.
In Erling v. Powell, supra, a case remarkably similar to the instant case, Erling alleged that the Powells sold their controlling interest in the corporation to Shively knowing that Shively intended to deal fraudulently and dishonestly with the corporate assets (and that Shively carried out his intentions) resulting in injury to the minority shareholders at the moment of the consummation of the sale. Erling also sought a portion of the premium-in-excess of market value that the Powells received for their control stock. The court summarized its holding as follows:
"Neither Erling individually, the minority shareholders he purports to represent, nor the corporation . . . participated in the capacity of `purchaser' or `seller' in the allegedly fradulent sales of National Life stock. Thus, plaintiff clearly fails to meet the test of Birnbaum, supra, as originally enunciated . . . In one count, Erling seeks to recoup losses attributable to the management of the subject corporation by the Shively group. In two other counts, he seeks to acquire a portion of the gain which defendants obtained in the sale of control stock to Shively and obtained earlier in their purchase of corporate stock at an advantageous price from other share-holders of National Life, not deception practiced in actually buying or selling securities. Such claims do not fall within the ambit of § 10(b) or Rule 10b-5. If cognizable at all, they must be presented to a state court."
Plaintiffs herein have alleged that defendant Longchamps purchased 53% interest in Steak n Shake, as a part of a scheme to defraud and misuse Steak n Shake assets; that all defendants conspired with Longchamps in the misuse of Steak n Shake assets; that in furtherance of the scheme, Steak n Shake executed promissory notes to Longchamps for certain franchises and equipment to the great benefit of Longchamps and the great detriment of Steak n Shake. Plaintiffs do not allege that Steak n Shake was deceived, or was victimized by a scheme to defraud in connection with the execution of the promissory notes. On the contrary plaintiffs allege that the Board of Directors knew the value of the franchises and the equipment and participated in the plan. In essence, plaintiffs' claims are based upon an alleged breach of fiduciary duty owing Steak n Shake and its minority stockholders, and not deception practiced in actually selling securities. The fact that promissory notes were executed by Steak n Shake as part of the alleged misuse of corporate assets does not place plaintiffs' claims within the ambit of § 10(b) or Rule 10b-5. The promissory notes were evidence of the debt partially owing to Longchamps for the acquisition of a franchise, and were neither purchased nor sold within the meaning of the 1934 Act. Plaintiffs' claims, if cognizable, must be presented to a state court. See, Gordon v. Lipoff, 320 F.Supp. 905 (W.D.Mo. 1970).
The Court concludes that plaintiffs, individually, for the class, or derivatively, are without standing under § 10(b) and Rule 10b-5, and the claims stated by plaintiffs in Count I are outside the coverage of § 10(b) and Rule 10b-5. Accordingly, Count I will be dismissed.
Several of the defendants challenge the jurisdiction of this court as to Count II which is based upon an alleged violation of § 14(a) of the 1934 Act, 15 U.S. C. § 78n, and Rule 14(a)-(9) thereunder.
The gist of Count II is that defendants had a duty to make full and accurate disclosure in the proxy solicitation; *440 and that the proxy material, was misleading in that defendants failed to disclose that plaintiffs had made written demand upon the defendant officers and directors of Steak n Shake for restitution of all monies misapplied and misappropriated; for rescission of every agreement between Steak n Shake and Longchamps; and for institution of legal action against Longchamps; and of each of the individual defendants for an accounting, restitution and damages.
The relevant portion of the proxy which is the subject of Count II states:
"The corporation knows of no pending litigation to which the new by-law provisions covering indemnification would apply. The corporation has received communications from a limited number of its stockholders questioning or objecting to certain of the transactions between the corporation and Longchamps described under `Interests of Management in certain transactions.' However the corporation has been in communication with such stockholders and has not been advised that any stockholder intends to institute legal proceedings against the corporation, the officers or directors, or Longchamps."
Defendants contend that Count II is fatally defective in that the alleged misleading statements did not cause any harm, and were not material.
An essential element of a claim derived from § 14(a) of the 1934 Act is that the corporate action under attack and the damages to plaintiff were caused by the alleged violation of § 14(a) and Rule 14a-9. J. I. Case Co. v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964); Barnett v. Anaconda Co., 238 F.Supp. 766 (S.D.N.Y.1965); Robbins v. Banner Industries, Inc., 285 F. Supp. 758 (S.D.N.Y.1966); Weiss v. Sunasco Incorporated, 295 F.Supp. 824 (S.D.N.Y.1969). But, see, Laurenzano v. Einbender, 264 F.Supp. 356 (E.D.N. Y.1966).
As the court stated in Weiss, supra, 295 F.Supp. at p. 828:
"In order to establish such a claim the plaintiff must allege such causation and assume the burden of proving it by a fair preponderance of the evidence. If the corporate action allegedly causing the damages would in any event have occurred regardless of the statements made in the proxy solicitation, the claim, insofar as it is based on § 14(a), must be dismissed."
In Count II, plaintiffs herein have avoided making any allegation of causation. Paragraph 7 of Count II states that the by-law amendment "was unlawfully passed with the favorable votes of shareholders from whom proxies had been unlawfully solicited, together with the favorable vote of the majority 53% shareholder, Defendant Longchamps, Inc.". Plaintiffs have not only failed to allege causation, but have affirmatively alleged that the by-law amendment was passed with the favorable vote of Longchamp's 53% controlling interest, which constituted the majority vote required for passage of the by-law amendment.
It is the opinion of the Court that Count II is fatally defective in failing to allege the essential element of causation. However, an examination of materiality is appropriate in view of the opinion of the United States Supreme Court in Mills v. Electric Auto-Lite Co., 396 U.S. 375, 385, 90 S.Ct. 616, 622, 24 L.Ed.2d 593 (1970) wherein the Supreme Court stated:
"Where there has been a finding of materiality, a shareholder has made a sufficient showing of causal relationship between the violation and the injury for which he seeks redress if, as here, he proves that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction . . . ."
And in footnote 7 thereto:
"We need not decide in this case whether causation could be shown where the management controls a sufficient number of shares to approve the transaction without any votes *441 from the minority. Even in that situation, if the management finds it necessary for legal or practical reasons to solicit proxies from minority shareholders, at least one court has held that the proxy solicitation might be sufficiently related to the merger to satisfy the causation requirement." (citations omitted)
The proxy statement contained no false statements. Plaintiffs claim that the statement was misleading in that it omitted to state their names and the exact nature of their demands: for restitution, damages, an accounting, the stockholders list and books and records, and the amount of the claim.
An omission or misstatement under § 14(a) must refer to a material fact, that is, a fact that might have been considered important by a reasonable shareholder who was in the process of deciding how to vote. Mills v. Electric Auto-Lite Co., supra at p. 384, 90 S.Ct. 616, 24 L.Ed.2d 593; Sunray DX Oil Co. v. Helmerich & Payne, Inc., 398 F.2d 447 (10th Cir. 1968).
At the time the proxy materials were mailed, no litigation was pending and plaintiffs had not yet notified defendants of their intention to file suit. The objections of plaintiffs were set out and made public in the proxy materials. It is this Court's opinion that no reasonable shareholder would have been influenced in his vote by knowing the names of those objecting or the exact nature of the relief they had requested. The single case cited by plaintiffs in support of their position, Beatty v. Bright, 318 F. Supp. 169 (S.D.Iowa 1970) is factually distinguishable and inapplicable.
The Court concludes that the alleged omissions in the proxy statement are not material, and that plaintiffs are unable to allege the element of causation essential to a claim under § 14(a).
Accordingly the relief sought by plaintiffs in Count II under § 14(a) of the 1934 Act and Rule 14a-9 thereunder will be denied and said count dismissed.
Count III is without a basis of federal jurisdiction except by the exercise of pendent jurisdiction. In United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966), the Supreme Court discussed pendent jurisdiction as follows:
"Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."
There being no substantial federal claim to support the plaintiffs' claim, the Court will dismiss Count III without prejudice for lack of jurisdiction.
The findings and conclusions as discussed above make unnecessary a determination of the defendants' contentions with respect to the derivative and class actions, the personal jurisdiction over certain defendants, the venue, and the propriety of staying or transferring this action.