**CAMBRIDGE CAPITAL CORPORA-TION, Plaintiff,**

v.

**NORTHWESTERN NATIONAL BANK OF MINNEAPOLIS et al., Defendants.**

No. 4-72-Civ. 46.

United States District Court, D. Minnesota, Fourth Division.

May 25, 1972.

---

7. The disagreement of these three Justices with the majority of the Court had nothing to do with this question.

Robert J. Henson, Henson, Webb & Tully, Minneapolis, Minn., for plaintiff.

Duane W. Krohnke, Faegre & Benson, Minneapolis, Minn., for Northwestern Nat. Bank of Minneapolis.

Rodney M. Hynes, Minneapolis, Minn., for Savage State Bank.

Robert G. Share, Henretta, Friedell, Share, McGinty & Solomon, Minneapolis, Minn., for Joseph Geller and Ben Bigos.

## MEMORANDUM DECISION

LARSON, District Judge.

The complaint in this action asserts seven claims—one under Federal law (Count One) and the others under State law (Counts Two through Seven). This action is presently before the Court on a motion by the defendants to dismiss Count One of the complaint with prejudice for failure to state a claim upon which relief can be granted and to dismiss Counts Two through Seven of the complaint without prejudice on the ground of lack of jurisdiction over the subject matter. It is agreed by the par-

ties that if Count One is so dismissed, the remaining six Counts should also be dismissed. On the other hand, it is also agreed that if Count One is not dismissed, the remaining six Counts should likewise not be dismissed. The motion was argued to the Court on April 11, 1972.

The facts which underlie this dispute are as follows: On September 16, 1970, plaintiff sold to a third party, Charter Management, Inc. (Charter), 2,453 shares of the capital stock of Savage State Bank (Savage Bank). On the same day Charter obtained a loan of $500,000 from Northwestern National Bank of Minneapolis (Northwestern Bank). This loan was evidenced by a promissory note, and was secured by a pledge of 2,401 of the shares in the Savage Bank which Charter had just obtained from plaintiff. Northwestern Bank perfected its security interest in these shares by taking possession of them. Also, on the same day, as part of its payment to plaintiff of the purchase price of the stock, Charter executed to the order of plaintiff a promissory note in the amount of $350,000. This note was secured by giving plaintiff a security interest in the same 2,401 Savage Bank shares in which Northwestern Bank had its security interest. It was agreed among the parties that plaintiff's security interest was to be subordinate to that of Northwestern Bank. It was also agreed that Northwestern Bank would act as plaintiff's agent in holding the shares.

Subsequently Charter defaulted both on its note to Northwestern Bank and on its note to plaintiff. Following the defaults, Northwestern Bank forced the sale of the 2,401 shares of stock at a sheriff's sale on November 15, 1971. The stock was purchased by defendants Geller and Bigos for $510,000.00, thus providing enough money to satisfy Charter's indebtedness to Northwestern Bank, but leaving only about $800.00 (after expenses of the sale, etc.) to be applied to Charter's indebtedness to plaintiff.

Plaintiff then brought the instant action charging, with regard to Count One, that prior to the sheriff's sale the defendants had consulted among themselves to determine what information should be released to prospective buyers of the stock, and that, as a result of these consultations, the information which was released contained significant and material omissions which tended to reduce the price of the stock. Plaintiff claims that these activities on the part of the defendants violated § 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 promulgated thereunder.[1]

---

1. Section 10(b) reads:
   "*Manipulative and deceptive devices*
   It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—
   \*      \*      \*      \*      \*
   (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." 48 Stat. 891 (1934), 15 U.S.C. § 78j(b) (1964).

   Rule 10b–5 reads:
   "*Employment of manipulative and deceptive devices.*
   It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
   (a) To employ any device, scheme, or artifice to defraud,
   (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made not misleading, or
   (c) To engage in any act, practice or course of business which oper-

At the outset it should be noted that although § 10(b) and Rule 10b–5 do not expressly create a private right of action, the courts have long implied such a right. Erling v. Powell, 429 F.2d 795, 797 (8th Cir. 1970). The extent of this private right of action, of course, is measured by the terms of the statute and the rule.

In their present motion defendants claim that plaintiff has failed to state a claim, under the statute and the rule, upon which relief can be granted. In ruling upon such a motion, the Court must answer two questions: (1) Whether the conduct alleged in the complaint is proscribed by the statute and the rule; and (2) whether the plaintiff has standing under the statute and the rule to bring the action.

The first question presents no problem in the instant action. It is clear that the conduct alleged in the complaint is proscribed by the statute and the rule. The complaint clearly alleges activities on the part of the defendants which operated as a fraud or deceit upon the plaintiff in connection with the purchase or sale of securities.

The more difficult question presented by the instant action is whether plaintiff has standing to sue under § 10(b) and Rule 10b–5. With regard to this standing question, the rule is well established in the Federal courts that a party who has been injured by the breach of a statutory duty has standing to sue to recover for the injuries which have been caused by the breach only if he is a member of the class of persons which the statute was designed to protect. Greater Iowa Corp. v. McLendon, 378 F.2d 783, 790 (8th Cir. 1967).

In applying this rule to § 10(b) and Rule 10b–5, most Federal courts, beginning with the Second Circuit in Birnbaum v. Newport Steel Corp., 193 F.2d 461 (2nd Cir.), cert. denied, 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952), have determined that the class of persons which § 10(b) and Rule 10b–5 were designed to protect consists only of purchasers and sellers of securities. These courts have accordingly held that only defrauded purchasers and sellers of securities have standing to sue under § 10 (b) and Rule 10b–5. This so-called "purchaser-seller requirement" has been adopted by the Eighth Circuit. Erling v. Powell, supra; Vanderboom v. Sexton, 422 F.2d 1233 (8th Cir.), cert. denied, 400 U.S. 852, 91 S.Ct. 47, 27 L.Ed.2d 90 (1970); City National Bank v. Vanderboom, 422 F.2d 221 (8th Cir.), cert. denied, 399 U.S. 905, 90 S.Ct. 2196, 26 L. Ed.2d 560 (1970); Greater Iowa Corp. v. McLendon, supra.

The question therefore which this Court must decide is whether plaintiff was a purchaser or seller of the securities which were sold at the sheriff's sale on November 15, 1971. From the allegations of the complaint it is clear that plaintiff was not a "purchaser" of those securities. Whether plaintiff was a "seller" of those securities, however, is a far more difficult question.

Although there have been many decisions which have dealt with this "purchaser-seller requirement," there appear to be none which have considered the problem presented by the instant action, viz., whether, where the securities which were sold were sold at a sheriff's sale, where prior to the sale the party seeking standing possessed a security interest in the securities, and where by virtue of its security interest, this secured party was directly entitled to a portion of the proceeds of the sale, that party qualifies as a "seller" of the securities for purposes of the standing requirements under § 10(b) and Rule 10b–5. Furthermore, not only has this issue not been faced in previous de-

ates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b–5 (1971).

Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa, confers exclusive jurisdiction upon Federal courts to enforce any liability created by the Act or by its rules.

cisions, but those decisions, as well as the terms of the statute, also offer very little guidance in the analysis of the problem.

The Court therefore will turn to a discussion of the analyses offered by the parties. The defendants' analysis is quite simple. They simply state that Charter was the true "owner" of the securities here involved, and that as such it was the only "seller" of those securities. The Court, however, cannot adopt this approach. The concepts of "ownership" and "title" are far too complex to be amenable to such a simplistic analysis.

It would seem to be a far better approach, as is suggested by plaintiff, to examine the various rights that each of the interested parties possessed in the securities prior to the sale, and then, based upon this examination, make a determination as to whether the rights possessed by the particular party in question were sufficient to qualify that party as a "seller" of the securities.

Applying this approach to the facts of the instant case, the rights possessed by the various interested parties prior to the sheriff's sale can be summarized as follows:

1. Northwestern Bank was in physical possession of the shares as it had been for the past year; upon default on the underlying loan it was entitled to sell the shares or otherwise dispose of them and receive the first $500,000 of proceeds;

2. Cambridge was entitled to possession of the shares after Northwestern Bank; upon default on the underlying loans, it was entitled to $350,000 of the proceeds of any disposition of the shares after Northwestern Bank had collected its $500,000; in addition, it possessed various other rights with regard to the shares, including the rights to receive dividends and income thereon, to vote the shares and to transfer them to others;

3. Charter was considered the owner of the shares by the issuing corporation; it was entitled to their return after it had paid off the loans from Northwestern Bank and Cambridge; upon default on the loans, it was entitled only to the proceeds of any disposition of the shares in excess of $850,000.

On these facts this Court simply cannot conclude that Charter was a seller of the securities, while Cambridge and Northwestern Bank were not. The normal rights and indicia of ownership with respect to the securities were divided among the three parties: the right to possession was held by the secured parties; in the event of default on the loans the secured parties obtained the right to dispose of the securities and to receive the proceeds of the disposition to the extent of their loans to Charter; both Cambridge and Northwestern Bank possessed substantial other rights with respect to the securities, including voting rights, dividend rights and the right to transfer the securities; in fact, as of the time of the sale, the only significant indicia of ownership retained by Charter was its entitlement to any proceeds of the disposition which remained after the secured parties had satisfied their interests. Thus, with the normal indicia of ownership being held primarily by Cambridge and Northwestern Bank, it seems clear that they, along with Charter, were "sellers" of the securities.

The dictionary definition of "seller" is, not surprisingly: "one who sells." The Random House Dictionary of the English Language, p. 1296 (Unabridged ed. 1966). The dictionary definition of "sell" is:

> "To give up or make over to another for a consideration; dispose of to a purchaser for a price." The Random House Dictionary of the English Language, p. 1296 (Unabridged ed. 1966).

In the instant case Cambridge, Northwestern Bank and Charter all gave up or made over their rights in the securities to another for a consideration. All

three shared in the ownership rights with respect to the securities; all three therefore were "sellers" of the securities.

In reaching this conclusion, one factor has been of critical importance to the Court's determination, that factor being that the secured parties, Northwestern Bank and Cambridge, were directly entitled to the proceeds of the sale of the securities. The proceeds were not to go first to Charter and then to the secured parties, but were to go directly to the secured parties, with Charter being entitled only to the residue after the secured parties' interests had been satisfied. The Court feels that in such a situation the parties who are directly entitled to the proceeds of the sale should be considered "sellers" of the securities for purposes of the standing requirements under § 10(b) and Rule 10b–5.

This conclusion is buttressed by the fact that in recent years the Second Circuit has taken a rather relaxed approach to the determination of who qualifies as a "seller" of securities for purposes of the § 10(b) and Rule 10b–5 standing requirement. See, e. g., Crane Co. v. Westinghouse Air Brake Co., 419 F.2d 787 (2d Cir. 1969), cert. denied, 400 U. S. 822, 91 S.Ct. 41, 27 L.Ed.2d 50 (1970) (Party who had not sold stock at time of suit had standing to sue under § 10(b) and Rule 10b–5, because if suit were not successful, antitrust considerations would require it to sell its stock; party was considered a "forced seller."); A. T. Brod & Co. v. Perlow, 375 F.2d 393 (2nd Cir. 1967) (Broker who had acquired stock pursuant to his customer's order and who was forced to sell the stock at a loss because his customer refused to pay him for it, had standing to sue the customer under § 10(b) and Rule 10b–5; Court stated that actions available under § 10(b) and Rule 10b–5 are not limited to those brought by "investors."); Vine v. Beneficial Finance Co., 374 F.2d 627 (2nd Cir.), cert.

denied, 389 U.S. 970, 88 S.Ct. 463, 19 L. Ed.2d 460 (1967) (Party who had not sold stock at time of suit had standing to sue under § 10(b) and Rule 10b–5, because, if suit were not successful, he would be required, by law regulating short form mergers, to sell his stock; party was considered a "forced seller."); Ruckle v. Roto American Corp., 339 F.2d 24 (2nd Cir. 1964) (Corporation, as issuer of stock, has standing to sue under § 10(b) and Rule 10b–5.). And, although the Eighth Circuit has not as yet been presented with factual situations similar to those presented to the Second Circuit in these cases, it has indicated that, if presented with such situations, it would probably follow the Second Circuit's relaxed approach. See discussion in Erling v. Powell, supra, 429 F.2d at 798–800.

At this point the exact holding of the Court in the instant case should be made clear. The Court does not hold that any creditor of an owner of securities may, when those securities are sold, be considered a "seller" of those securities, nor does it hold that any secured creditor of such an owner may be considered a "seller." It merely holds that, in situations such as that presented by the instant case, where the securities which were sold were sold at a sheriff's sale, where the party seeking standing possessed prior to the sale a security interest in the securities which were sold, and where, by virtue of its security interest, this secured party was directly entitled to a portion of the proceeds of the sale, that party qualifies as a "seller" of those securities for purposes of the standing requirements under § 10(b) and Rule 10b–5.

The Court therefore finds that plaintiff was a "seller" of the securities involved in the instant action, and that it thus has standing to sue under § 10(b) and Rule 10b–5. The defendants' motion to dismiss the complaint must accordingly be denied.